## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Michael E. Jones and Edith A. Jones,

      Plaintiffs,

v.

REES-MAX, LLC; Real Estate Equity
Strategies, LLC; Chadwick Banken; and
Central Bank,

      Defendants

Civil File No. 82-C5-05-55956

Case No. 05-CV-2384 [MJD/AJB]

**FIRST AMENDED COMPLAINT**

### DEMAND FOR JURY TRIAL

Plaintiffs, as and for their Complaint against Defendants, state and allege as follow:

### INTRODUCTION

1.    This case involves the practice known as "equity stripping." Plaintiffs Michael E. Jones ("M. Jones") and Edith A. Jones ("E. Jones") (collectively referred to as the "Joneses") are husband and wife and the owner of a home commonly referred to as 7451 27th Street Circle North, Oakdale, Minnesota 55128 and legally described as follows: Lot 10, Block 1, Hillvale First Addition, Washington County, Minnesota (the "Property"). In the fall of 2004, the Joneses fell behind on their mortgage in favor of Wells Fargo Home Mortgage, Inc. and the Property went into foreclosure.

2.    In April 2005, Defendant Chadwick Banken, after learning that the Property was in foreclosure and that the Joneses held equity in the Property, solicited the Joneses by sending to the Joneses a direct mailing regarding Defendants' services via United States mail. The direct mailer urged Plaintiff to contact Defendant Chadwick Banken as time had not run out yet and

that Defendants may be able to help when no one else could.  Within a few days of receiving the direct mailer, M. Jones contacted Defendant Chadwick Banken in response.

3.      Thereafter, Defendant Chadwick Banken set up a transaction whereby the Joneses sold their home to REES-MAX ("REES-MAX") for the price of $268,000.00, paid over $52,000.00 in various fees, entered into a lease agreement with Real Estate Equity Strategies, LLC ("REES") with the possibility of reclaiming title and ownership to the Property via a Contract for Deed with REES upon the making of three timely lease payments.

4.      The re-conveyance transaction was clearly intended by the Defendants to permit the Defendants to profit from the scheme and to profit again by stripping Plaintiffs from any equity in the Property.

5.      Plaintiffs bring this action, in part, under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, consumer fraud, Minn. Stat. § 325F.69, equity stripping MINN. STAT. § 325N.

6.      Jurisdiction is conferred upon this Court by 15 U.S.C. § 1640 (e) and 28 U.S.C. §§ 1331 and 1367.  Venue in this district is proper under 15 U.S.C. § 1640 (e).

## PARTIES

7.      Plaintiffs Michael E. Jones and Edith A. Jones are husband and wife, who currently reside at the Property.  Defendant Real Estate Equity Strategies, LLC is a Minnesota limited liability company.  According to the records filed with the Minnesota Secretary of State, Real Estate Equity Strategies, LLC ("REES") is located at 6200 Baker Road, Suite 200, Eden Prairie, Minnesota 55346.

8.      Defendant REES-MAX, LLC is a Minnesota limited liability company. According to records filed with the Minnesota Secretary of State, REES-MAX, LLC is located at 6200 Baker Road, Suite 200, Eden Prairie, Minnesota 55346.  Defendant Chadwick Banken, is

2

an individual that holds a 75% ownership interest in Defendant REES, and upon information and belief, holds an ownership interest in Defendant REES-MAX. Chadwick Banken, REES and REES-MAX are "foreclosure consultants" and "foreclosure purchasers" pursuant to the definitions set forth in Minn. Stat. § 325N.01 and Minn. Stat. § 325N.10, subd. 4, respectively.

9.      Defendant Central Bank is a Minnesota corporation with its place of business located at 6640 Shady Oak Road, Eden Prairie, Minnesota 55344. Central Bank is named in this rescission action as a necessary and indispensable party by virtue of its claimed interest the Property through a mortgage filed for record in the Office of the County Recorder for Washington County, a Document No. 3531294 whereby Central Bank is the mortgagee and REES-MAX is the mortgagor.

## FACTS

10.      In 1976 E. Jones undertook construction of the Property with M. Jones acquiring an interest therein through his marriage to E. Jones in 1987. Plaintiffs have resided in the Property individually or collectively since its construction in 1976.

11.      On or about September 4, 2003, Plaintiffs took out a mortgage loan in the principal amount of $182,750.00 with Wells Fargo Home Mortgage, Inc. secured by a mortgage against the Property in favor of Wells Fargo Home Mortgage, Inc. Thereafter, in the Fall of 2004, Plaintiffs fell behind on the payments to Wells Fargo Home Mortgage, Inc. causing the Property to go into foreclosure.

12.      Some time in April 2005, Defendant Chadwick Banken solicited Plaintiffs by United States mail requesting Plaintiffs to contact him if Plaintiffs were interested in saving their home from foreclosure.

3

13.     Thereafter, on a Friday in April of 2005, M. Jones contacted Chadwick Banken in response to the direct mailer.  Plaintiffs met with Chadwick Banken at Plaintiffs' home that Sunday.

14.     During Chadwick Banken's meeting with Plaintiffs at the Property, Chadwick Banken represented that he and his related companies would be able to assist the Jones' in saving their home from foreclosure.  At this initial meeting at Plaintiffs' home, Defendant Chadwick Banken provided Plaintiffs with no written agreements, disclosures, contracts or any other material outlining the services Defendants would provide to Plaintiffs or any written documentation outlining the proposed transaction meant to save Plaintiff's home from foreclosure.  Defendant Chadwick Banken did provide Plaintiffs with his business card representing that he was a "mortgage broker" and "real estate investor".

15.     During the meeting that occurred at Plaintiffs' home, Defendant Chadwick Banken informed Plaintiffs that he needed an appraisal of the Property to determine its value and also needed payoff information on the mortgage in default and any other liens of the Property. Defendant Chadwick Banken required Plaintiffs to gather the requested information and contact him to discuss the transaction further if the "numbers worked out."  To expedite the gathering of the information, Defendant Chadwick Banken provided Plaintiffs with the name of a real property appraiser that could perform the appraisal on short notice.  M. Jones contacted the appraiser and arranged for the inspection of the Property by the appraiser on or about April 21, 2005.  The Property appraised at $278,000.00 as of April 21, 2005.  Notwithstanding multiple requests from M. Jones to Defendant Chadwick Banken to receive a copy of the appraisal, a copy was not provided until after closing.

4

16.     Sometime after the appraisal on or about April 21, 2005, but prior to May 9, 2005, Plaintiffs were mailed transactional documents, including, but not limited to a Minnesota Standard Residential Purchase Agreement ("Purchase Agreement") indicating and setting forth that Plaintiffs would convey their interest in the Property for the purchase price of $268,000.00, said purchase price to be paid by $38,050.00 cash and the remainder by financing on the date of closing.  The Purchase Agreement provided to Plaintiffs fails to indicate the identity of the buyer.  Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the Purchase Agreement executed by Plaintiffs on May 9, 2005.

17.     Also mailed to Plaintiffs was a Pre-negotiation Disclosure indicating that "Real Estate Equity Strategies, LLC . . . is in the business of assisting people who may be losing all or some of their interest in real estate (Property) after the foreclosure sale of a mortgage or other lien by one of their creditors."  The Pre-negotiation Disclosure provided to Plaintiffs by REES fails to contain the statutory notices required from a foreclosure consultant and foreclosure purchaser by Minn. Stat. Chap. 325N.  Attached hereto as Exhibit "B" and incorporated herein by reference is a true and correct copy of the Pre-negotiation Disclosure provided to Plaintiffs on May 9, 2005.

18.     The transactional documents mailed to Plaintiffs also included a Contract for Deed Proposal Agreement setting forth the terms and conditions whereby Plaintiffs would be entitled to reacquire their home via a Contract for Deed from REES 60 days after REES purchased the Property from Plaintiffs.  Attached hereto as Exhibit "C" and incorporated herein by reference is a true and correct copy of the Contract for Deed Proposal Agreement.

19.     The proposed Contract for Deed provides for a 9.00% interest rate with additional terms as follows:

5

|   |   |   |
|---|---|---|
| a. | $275,000.00 | Estimated contract price |
| b. | $ 38,050.00 | Less down payment |
| c. | $236,950.00 | Estimated contract balance. |

20.    And finally, the documents mailed to Plaintiffs included a Residential Real Estate Lease ("Lease") by and between REES and Plaintiffs. Pursuant to the Lease, the term of the Lease was month-to-month for a total of up to 12 months requiring a lease payment of $2,005.00. Attached hereto as Exhibit "D" and incorporated herein by reference is a true and correct copy of the Residential Real Estate Lease Agreement.

21.    On May 9, 2005, Plaintiffs and Defendant Chadwick Banken held a telephone conference. Plaintiffs were shocked by the rent amount of $2,005.00 set forth in the Lease and when questioned by them, Defendant Chadwick Banken represented that the amount in the Lease was not final as the amount was subject to change based on the "final numbers." Defendant Chadwick Banken represented to Plaintiffs that the Lease payment would be within $100.00 of their approximate $1,700.00 monthly indebtedness to Wells Fargo Home Mortgage, Inc. Based on this representation, Plaintiffs understood that their monthly Lease payment would be between approximately $1,600 to $1,800.00.

22.    Plaintiffs executed the Purchase Agreement, Pre-negotiation Disclosure, Contract for Deed Proposal Agreement and Lease on May 9, 2005. Thereafter, but sometime before June 2, 2005, Plaintiffs traveled to Defendant Chadwick Banken's office in Roseville with their copies of the signed documents. Upon information and belief, Chris Conati, a representative of Defendant REES and/or REES-MAX, took the original documents from Plaintiffs, copied them, and provided Plaintiffs with the copy, retaining the originals.

23.     On June 2, 2005, Plaintiffs met with Defendant Chadwick Banken at the offices of Title One, Inc. ("Title One"), 1970 Oak Crest Avenue, Suite 108, Roseville, Minnesota 55113. At Title One, the parties completed the foreclosure re-conveyance transaction where REES-MAX purchased the Jones' home, for substantially less than the stated purchase price. The identity of REES-MAX as the purchaser of the Jones' home was first disclosed to Plaintiffs at closing.

24.     Notwithstanding the stated purchase price of $268,000.00 set forth in the Purchase Agreement attached hereto as Exhibit "A," REES-MAX purchased the Property for the sum of $214,400.00, which represents the amount borrowed by REES-MAX from Central Bank to purchase the Property and used to satisfy the mortgage in foreclosure with Fells Fargo. REES-MAX brought no other funds to closing. The remainder of the purchase price represents the "equity" in the Jones' home. The equity in Jones' home was distributed to REES as a fee in the amount of $18,912.34, with a second distribution to REES in the amount of $33,092.00. In all, REES received $52,004.34 in fees for its role in this re-conveyance transaction. Attached hereto as Exhibit "E" is a true and correct copy of the Sellers' HUD-1 relative to the closing on the Property.

25.     Defendant REES-MAX  financed the purchase of the Property through Central Bank, 6640 Shady Oak Road, Eden Prairie, MN 55344. The Property is currently encumbered by a Mortgage is favor of Central Bank filed for record as Document No. 3531294 in the Office of the County Recorder for Washington County securing the underlying indebtedness to Central Bank to finance the purchase of the Property. The recorded owner of the Property as of June 2, 2005 is REES-MAX.

7

26.     The re-conveyance transaction took place entirely at the office of Title One and was facilitated by Title One's employees. It is clear on the face of the documents that this was a foreclosure re-conveyance transaction. Title One knew or should have known the nature of the transaction.

27.     On June 2, 2005, after the completion of the closing, Defendant Chadwick Banken represented that Plaintiffs would be receiving confirmation via mail of the final Lease amount now that all the "final numbers" were determined. M. Jones contacted Defendant Chadwick Banken during the first portion of July 2005 informing Defendant Chadwick Banken that he had not received the final Lease payment amount. Defendant Chadwick Banken instructed M. Jones to contact Anne Storms in the company's accounting department. After contacting Anne Storms, Plaintiffs received a document in the mail titled REES-MAX Payment Fact Sheet. In complete contradiction to Defendant Chadwick Banken's representation that the monthly Lease payment would be between $1,600.00 and $1,800.00, Plaintiffs' monthly Lease payments for July 2005 (prorated for the period June 3, 2005 to June 30, 2005 was $2,203.00; payments for August 2005 and September 2005 were $2,455.00; and payments for October 2005 and November 2005 were $2,040.66 and $1,955.00 respectively. Attached hereto as Exhibit "F" is a true and correct copy of the REES-MAX Payment Fact Sheet.

28.     At no time prior to or during this transaction did any of the Defendants provide to Plaintiffs any of the contracts or disclosures required by Minn. Stat. Chap. 325N, the Federal Truth in Lending Act (TILA), 15 U.S.C § 1602, et. seq. or the Home Ownership Equity Protection Act (HOEPA) 15 U.S.C. § 1639, et. seq.

29.     As anticipated by Defendants REES, REES-MAX and Chadwick Banken, Plaintiffs were unable to make the inflated monthly payments set forth in the Payment Fact Sheet

8

attached hereto as Exhibit "F" and Defendant REES, as the alleged "agent" of REES-MAX commenced an eviction proceeding in Washington County District Court, Court File No. CO-05-5749 on or about September 8, 2005.

30.     On September 19, 2005, Plaintiffs filed a separate action in Washington County District Court asserting therein causes of action for:

a.     violations of the Minnesota Foreclosure Consultant Statute, Minn. Stat. § 325N;

b.     rescission of the Foreclosure Consultant Statute;

c.     violation of Minnesota Foreclosure Purchaser Statute, Minn. Stat. § 325N.10-.18;

d.     rescission of Foreclosure Purchaser Contract;

e.     violation of Minnesota Prevention of Consumer Fraud Act; and

f.     equitable mortgage.

Thereafter, Plaintiffs amended their district court action to include violations for the Federal Truth In Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA").

31.     On October 10, 2005, the Washington County district court held a hearing in the ("Eviction Action"). At the hearing, Defendant REES obtained a writ of recovery and have subsequently evicted Plaintiffs from the Property.

32.     On October 11, 2005, Plaintiffs dismissed their state court action, without prejudice, and have filed suit to seek redress in the United States District Court for the District of Minnesota.

33.     Notwithstanding this instant action, and a Notice of Lis Pendens filed against the title of the Property with the Office of the County Recorder for Washington County as Document No. 3546760 on October 20, 2005, Defendant Chadwick Banken listed the property for sale on

9

the multiple listing service, MLS No. 3112781 on October 28, 2005, through his real estate company, Real Estate Enhancement Group, LLC.  The property is listed for sale for the price of $279,900.00.

<p style="text-align:center"><strong>COUNT I</strong></p>

<p style="text-align:center"><strong>Violation of Foreclosure Consultant Statute<br/>Minn. Stat. §325N.01-.09</strong></p>

34.    Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

35.    Defendants Chadwick Banken, REES & REES-MAX are "foreclosure consultants" as that term is defined in Minn. Stat. §325N.01.

36.    The transaction described above is a "foreclosure re-conveyance" as that term is defined in Minn. Stat. §325N.01.

37.    Defendant Chadwick Banken individually and as a representative of REES-MAX and REES violated the Foreclosure Consultant Statute in multiple ways, including, but not limited to:

    a.    Failing to provide a contract as requires by Minn. Stat. §325N.03, 325N.04(7);

    b.    Receiving fees in excess of eight percent annum and acquiring an interest in the home.  Minn. Stat. §325N.04(2), (5);

    c.    Received consideration from third parties in the transaction.  Minn. Stat. §325N.04(4); and

    d.    Inducing Plaintiffs to enter into a contract that does not comply in all respects with sections 325N.02 and 325N.03.  Minn. Stat. §325N.04(7).

<p style="text-align:center">10</p>

38.     Defendant Chadwick Banken, REES and REES-MAX acted in bad faith with the intent to defraud and deceive Plaintiffs and ultimately obtain all the equity in Plaintiffs' home.

39.     Plaintiffs suffered injury as a result of Defendants Chadwick Banken, REES and REES-MAX's violations of the Foreclosure Consultant Statute and are entitled to compensatory damages in excess of $50,000.00, exemplary damages as allowed in Minn. Stat. §325N.06(c) and other appropriate relief.

## COUNT II

### Rescission of the Foreclosure Consultant Contract

40.     Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

41.     To the extent Plaintiffs entered into any contract with Defendants he hereby give notice that such contract is cancelled and rescinded pursuant to Minn. Stat. §325N.02.

42.     As a result of Plaintiffs' rescission, Defendants Chadwick Banken, REES & REES-MAX are required to return to Plaintiffs any consideration they received as a result of the transaction, including but not limited to the $52,004.34 and any settlement proceeds passed through Defendant Chadwick Banken's mortgage company Custom Mortgage & Funding, Inc., including any yield spread premium.

## COUNT III

### Violation of Foreclosure Purchaser Statute
### Minn. Stat. § 325N.10-.18

43.     Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

44.     Defendants REES-MAX and REES are "foreclosure purchasers" as that term is defined in Minn. Stat. §325N.10, subd. 4.

45.     The transaction described above is a "foreclosure re-conveyance" as that term is defined in Minn. Stat. §325N.10, subd. 3.

46.     Defendants REES-MAX and REES violated the Foreclosure Statute in a multitude of ways, including, but not limited to:

a.      Failing to provide the contract required by Minn. Stat. §325N.11-12;

b.      Entering into a foreclosure re-conveyance without first verifying that Plaintiffs had reasonable ability to successfully perform on the contract for deed.  Minn. Stat. §325N.17(a)(1);

c.      Entering into a foreclosure re-conveyance without complying with HOEPA and its implementing regulations.  Minn. Stat. §325N.17(a)(4);

d.      Entering into a repurchase agreement that was intended to fail. Minn. Stat. §325N.17(c);

e.      Engaging in unfair conduct by using phrases both in writing and orally that Plaintiffs were running out of time and that Defendants could save Plaintiffs' home.  Minn. Stat. §325N.17(d)(3)

f.      Making false, deceptive and misleading comments, including but not limited to, Defendants were saving Plaintiff's home, providing Plaintiffs with a Notice of Cancellation representing to Plaintiffs that their time to cancel the transaction expired *prior* to Plaintiffs' execution of the Purchase Agreement, providing Plaintiff's with a Notice of Cancellation with the name of a company to provide

12

notice to that was not in fact the purchaser of the Property, and that Plaintiffs'
home was being purchased for $268,000.00. Minn. Stat. §325N.17(e);

g.    Inducing and accepting conveyance of a deed to the Property prior to the end of
the cancellation period. Minn. Stat. §325N.17(f)(1);

h.    Recording with the Washington County Recorder a deed purporting to transfer
title of the Property prior to the end of the cancellation period. Minn. Stat.
§325N.17(f)(2); and

i.    Encumbering the Property with a mortgage provided to Central Bank prior to the
end of the cancellation period. Minn. Stat. §325N.17(f)(3).

47.    Defendants REES-MAX and REES acted in bad faith.

48.    Plaintiffs suffered injury as a result of Defendant REES-MAX and REES'
violations of the Foreclosure Purchaser Statute and are entitled to compensatory damages in
excess of $50,000.00, exemplary damages as allowed in Minn. Stat. §325N.18, subd. 2 and other
appropriate relief.

## COUNT IV

### Rescission of Foreclosure Purchaser Contract

49.    Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth
herein.

50.    To the extent Plaintiffs entered into any contract for the sale and re-purchase of
their home with Defendants REES-MAX and REES, they hereby give notice that such contract is
cancelled and rescinded pursuant to Minn. Stat. §325N.13.

51.    As a result of Plaintiffs' rescission, REES-MAX and REES are required to return
to Plaintiff any consideration they received as a result of the transaction, including, but not

13

limited to, to deed that they took as security and any funds they received, whether directly or indirectly, as proceeds from the transaction.

## COUNT V

### Minnesota Prevention of Consumer Fraud Act

52.    Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

53.    Minn. Stat. §325F.69 prohibits:

> The act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others shall rely thereon in connection with the sale of any merchandise, whether or not that person has in fact been misled, deceived or damaged thereby.

54.    Defendants Chadwick Banken, REES and REES-MAX have committed multiple and separate violations of the CFA by the above-described conduct in connection with the sale of merchandise, including but not limited to:

a.    Using misrepresentations, misleading statements, false promises of a deceptive practice in representing, directly or by implication, that Defendants would help Plaintiffs save their home;

b.    Using misrepresentations, misleading statements, false promises of a deceptive practice in representing, directly or by implication, that Plaintiffs would end up with a monthly Lease payment between $1,600.00 to $1,800.00;

c.    Using misrepresentations, misleading statements, false promises of a deceptive practice in representing, directly or by implication, that

14

Defendants were reputable business people who had helped others similarly situated to save their homes;

d.      Violating the requirements of Minn. Stat. Chap. 325N;

e.      Imposing excessive and unreasonable costs on Plaintiffs for services that were either of no benefit to Plaintiffs or were never performed;

f.      Representing that Plaintiffs were selling their home for the purchase price of $268,000.00; and

g.      Conspiring with and acting in reliance upon the misrepresentations and deceits of others in an effort to profit from the equity in Plaintiffs' home;

## COUNT VI

### Violation of the Truth in Lending Act and
### Home Ownership Equity Protection Act, 15 U.S.C. §§ 1601, et. seq.

55.      Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

56.      The Federal Truth in Lending Act ("TILA"), codified at 15 U.S.C. § 1601, et. seq., requires lenders that regularly extend consumer credit for which a finance charge is disclosed to disclose certain key loan terms, such as the annual percentage rate, finance charge, amount financed and payment schedule, prior to the consummation of a consumer credit transaction.  15 U.S.C. § 1638.

57.      In 1994, Congress passed the Home Ownership and Equity Protection Act ("HOEPA") in an attempt to prevent some predatory lending practices targeted at vulnerable homeowners.  HOEPA, codified as part of TILA (mainly at 15 U.S.C. §§ 1602 (aa), 1639 and 1641 (d)), regulates high cost home loans where either the "annual percentage rate" exceeds the

yields on comparable treasury securities by more than eight percentage points or where the total points and fees exceed eight percent of the loan amount. 15 U.S.C. § 1602 (aa).

58.    For an extension of credit subject to HOEPA, the creditor must provide two disclosures in addition to the disclosures required by TILA and Regulation Z. 15 U.S.C. § 1602 (aa), 12 C.F.R. § 226.32.

59.    The disclosures required for HOEPA include:    (1) a notice informing the consumer of the consequences of the loan they are about to obtain; and (2) a disclosure of the annual percentage rate and the amount of the regular monthly payment and any balloon payment. 15 U.S.C. § 1639 (a), 12 C.F.R. § 226.32 (c)(3).   These additional disclosures must be made three days prior to consummation of the transaction and the consumer must be given a copy of the written disclosures. 15 U.S.C. § 1639 (b), 12 C.F.R. 226.31.

60.    As an incident or a condition of the extension of the above-described credit, Defendants Chadwick Banken, REES and REES-MAX required Plaintiffs to tender over $50,000.00 in payment of fees and other settlement charges.   Defendants Chadwick Banken, REES and REES-MAX therefore imposed, directly or indirectly, or Plaintiffs have paid directly or indirectly, an amount in excess of $50,000.00 in order to obtain credit from Defendants. This amount, which does not include interest or the time-price differential, constitutes a finance charge in points and fees within the meaning of 15 U.S.C. § 1602 (aa) (4) and 12 C.F.R. § 226.32 (b) (1).

61.    Plaintiffs paid points and fees of approximately 38 percent of the total loan amount in connection with this transaction, substantially higher than the percent amount permitted by HOEPA. 15 U.S.C. § 1602 (aa), 12 C.F.R. § 226.32 (a) (1).

62.     Alternatively, if the finance charge is considered interest or time-price differential, it results in an annual percentage rate for this transaction that exceeds the permissible yield on a Treasury security with a comparable maturity and the loan was covered by HOEPA. 15 U.S.C. § 1602 (aa), 12 C.F.R. § 226.32 (a) (1) (i).

63.     A person is considered one that "regularly extends credit," as that term is used in the definition of "creditor" under TILA and HOEPA, if such person originates just one credit transaction covered by HOEPA through the use of a mortgage broker. 15 U.S.C. § 1602 (f), 12 C.F.R. § 226.2 (a) (17) (1).

64.     Defendants Chadwick Banken, REES and REES-MAX are "creditors" within the meaning of TILA and HOEPA because they originated at least one transaction covered by HOEPA through a mortgage broker and thus regularly extend credit.

65.     Plaintiffs are "consumers" within the meaning of TILA and HOEPA because they are natural persons and used the credit for personal, family or household purposes. 15 U.S.C. § 1602 (h).

66.     The transaction at issue in this case is a "consumer credit" transaction because the plaintiffs are consumers that have used the credit secured by their principal dwelling for personal, family or household purposes. 12 C.F.R. § 226.2 (a) (12).

67.     Defendants Chadwick Banken, REES and REES-MAX violated TILA, HOEPA in its implementing Regulation Z in several ways, including (a) failing to provide the disclosures required by TILA, including the amount of the finance charge, annual percentage rate, amount financed and payment schedule, prior to the consummation of the transaction; and (b) failing to make two additional disclosures required under HOEPA to be given three days in advance of the closing.

68.    Plaintiffs have suffered injury as a result of Defendants' violations of TILA and HOEPA and are entitled to damages and other appropriate relief as permitted by law.

## COUNT VII

### Equitable Mortgage

69.    Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

70.    The deed signed by Plaintiffs transferring title to REES-MAX and the arrangement promised by Defendants Chadwick Banken, REES and REES-MAX separately or in the aggregate were intended by the parties as a financing arrangement and not a deed absolute and therefore constitutes an equitable mortgage rather than a true sale and re-sale of the Property.

71.    To divest Plaintiffs of ownership interest in their home REES-MAX is required to foreclose the equitable mortgage pursuant to Minnesota foreclosure laws.  To the extent Defendants Chadwick Banken, REES and REES-MAX would seek to divest Plaintiffs of their interest pursuant to any other mechanism, they will be harmed and are entitled to an order enjoining Defendants Chadwick Banken, REES and REES-MAX from any such steps.

## COUNT VIII

### Rescission Under TILA and HOEPA
### 15 U.S.C. § 1635

72.    Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

18

73.     Plaintiffs have a continuing right to rescind the transaction under 15 U.S.C. § 1635 (f) because Defendants Chadwick Banken, REES and REES-MAX failed to provide the disclosures required by TILA and HOEPA.

74.     Through this Complaint, Plaintiffs hereby notify Defendants of their intention to rescind this transaction.  12 C.F.R. § 226.23 (a) (2).

75.     As a result of Plaintiffs exercising their right to rescind the transaction, any contract for this loan is void; Plaintiffs are not liable for any finance or other charges; Defendants must return all payments made by Plaintiffs; and Defendants must release the security interest in the Plaintiffs' home as provided under 15 U.S.C. § 1635 (b).

## COUNT IX

### Declaratory Judgment

76.     Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth herein.

77.     Plaintiffs bring this claim under the Minnesota Uniform Declaratory Judgment Act, codified at Minn. Stat. § 555.01, et. seq. and Minn. R. Civ. P. 57, to resolve and determine the amount required, if any, for Plaintiffs to rescind the contracts identified above.

78.     An actual and justiciable controversy exists between Plaintiff and Defendants Chadwick Banken, REES and REES-MAX regarding the amount required by Plaintiffs to rescind the transaction.

79.     Pursuant to Minn. Stat. § 555.01 – 555.03 and Minn. R. Civ. P. 57, Plaintiffs request a declaration from the court as to the amount the Plaintiffs must tender to rescind the transaction with Defendants.

## COUNT X

### Declaratory Judgment

80.     Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth

herein.

81.     Plaintiffs bring this claim against Defendant Central Bank under the Minnesota

Uniform Declaratory Judgment Act, codified at Minn. Stat. § 555.01, et. seq. and Minn. R. Civ.

P. 57, to resolve and determine the interest held by Defendant Central Bank by virtue of the real

estate mortgage recorded with the Washington County Recorder's Office as Document No.

3531294.

82.     An actual and justicable controversy exists between Plaintiffs and Defendant

Central Bank regarding the interest of Defendant Central Bank in the Property.   Therefore,

Defendant Central Bank is a necessary and indispensable party in the action to rescind the

subject transaction.

83.     To the extent that the subject transaction is rescinded, Plaintiffs request that the

mortgage filed for record against the Property in favor of Central Bank void and unenforceable,

or in the alternative that Central Bank deliver to Plaintiffs a satisfaction of mortgage.

## COUNT XI

### Unlawful Eviction

84.     Plaintiffs restate and re-allege all proceeding paragraphs as though fully set forth

herein.

85.     After notice of Plaintiff's intent to rescind the re-conveyance transaction pursuant

to Minn. Stat. Chap. 325N and TILA, 15 U.S.C. §§ 1601, *et seq.*, Defendant REES, LLC, a non-

owner of the Property continued to proceed with an unlawful eviction action, Washington County Court File No. C0-05-5749.

86.     Defendant REES' continued effort to evict Plaintiffs from the Property after notification of Plaintiffs' intent to rescind the re-conveyance transaction, is an unlawful attempt, made in bad faith to remove, exclude and forcibly keep Plaintiffs from the Property in order to frustrate Plaintiffs in their prosecution of their claims against Defendants Chadwick Banken, REES and REES-MAX in this action.

87.     Said conduct is in direct violation of Minn. Stat. § 504B.231 and entitles Plaintiffs to treble damages and reasonable attorney fees.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

1.     Declaring that the acts herein described constitute multiple and separate violations of 15 U.S.C. §§ 1638, 1639; Minn. Stat. § 325N.01-.18 and Minn. Stat. § 325F.69;

2.     Awarding judgment in favor of Plaintiffs and against Defendants REES, REES-MAX, LLC and Chadwick Banken for statutory and exemplary damages under Minn. Stat. §§ 325N.06 and 325N.18 for violations the Minnesota Foreclosure Consultant and Purchaser Statute;

3.     Awarding judgment in favor of Plaintiffs and against Defendants REES, REES-MAX and Chadwick Banken for statutory damages under 15 U.S.C. § 1640(a)(2);

4.     Awarding judgment in favor of Plaintiffs and against Defendants REES, REES-MAX and Chadwick Banken for HOEPA damages under 15 U.S.C. § 1640(a)(4) in an amount equal to the sum of all finance charges and fees paid;

5.	Awarding judgment for rescission of the transaction and any contracts between Plaintiffs and Defendants REES, REES-MAX and Chadwick Banken pursuant to §§ 325N.02 and 325N.13 and 15 U.S.C. § 1635(f);

6.	Awarding judgment for damages to Plaintiffs and against Defendants, jointly and severally, for each violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69;

7.	Awarding Plaintiffs costs and disbursements, as well as reasonable attorneys' fees, as authorized by 15 U.S.C. § 1640 and Minn. Stat. § 8.31, 325A.06 and 325N.18;

8.	Declaring the transaction between Plaintiffs and Defendant REES-MAX to be an equitable mortgage;

9.	Determining and adjudging the amount required to be tendered to rescind the transaction;

10.	Determining and adjudging the rights and interests of Central Bank in the Property by virtue of its mortgage interest in the Property;

11.	Requiring all the Defendants above-named to execute and deliver the necessary documents to clear title in the property to Plaintiffs; and

12.	For such further and other relief as the court deems just and equitable.

Dated: January 9, 2006

SEVERSON, SHELDON, DOUGHERTY
& MOLENDA, P.A.


/e/ Kristine K. Nogosek
By: Kristine K. Nogosek, I.D. #304803
     Robert B. Bauer, I.D. #227365
Attorneys for Defendants
  Mike and Edith Jones
7300 West 147th Street, Suite 600
Apple Valley, Minnesota 55124
(952) 432-3136

22

Form No. 262   MN Standard Residential Purchase Agreement (Rev. August, 1997)

Purchase Agreement / PAGE 1

# MINNESOTA STANDARD RESIDENTIAL PURCHASE AGREEMENT

@Copyright 1996, 1997 by Minnesota State Bar Association, Minneapolis, Minnesota.
BEFORE YOU USE OR SIGN THIS CONTRACT, YOU SHOULD CONSULT WITH A LAWYER TO DETERMINE THAT THIS
CONTRACT ADEQUATELY PROTECTS YOUR LEGAL RIGHTS. Minnesota State Bar Association disclaims any liability arising out of use
of this form.

1. PARTIES.   This Purchase Agreement is made on __April 19, 2005__, by and between __Michael R. and Edith R.__
__Jones_____ (marital status)____ __a married couple__
of (seller's address) ___7451 27th St Circle N, Oakdale, MN  55128_____, SELLER and
_____, their successors and/or assigns (strike "joint tenants" if tenancy-
in-common is intended) of (buyer's address)_____
_____, BUYER.

2. OFFER/ACCEPTANCE.   Buyer offers to purchase and Seller agrees to sell real property legally described as:

__HILLVALE 1ST ADD Lot-010 Block-001 HILLVALE 1ST ADD____

(Property Tax Identification Number or Tax Parcel Number _____)

located at _7451 – 27th St Circle N___, City of _____Oakdale_____,
County of __Washington_____, State of Minnesota, Zip Code __55128_____.

3. ACCEPTANCE DEADLINE. The acceptance date of this Purchase Agreement is the date it is delivered by the last party signing to
the other party.   This offer to purchase, unless accepted sooner, shall be void at 11:59 A.M. on (date) __April 29, 2005__,
and in such event all earnest money shall be refunded to Buyer.

4. PERSONAL PROPERTY AND FIXTURES INCLUDED IN SALE.  The following items of personal property and fixtures owned
by Seller and currently located on the real property are included in this sale (Strike out items not included): garden bulbs, plants,
shrubs, trees, storm windows and inserts, storm doors, screens, awnings, window sh ades, blinds, curtain – traverse – drapery rods,
attached lighting fixtures with bulbs, plumbing fixtures, sump pumps, water heaters, heating stoves, fireplace inserts,
fireplace doors and screens, built -in humidifiers, built-in air conditioning units, built-in electronic air filters, automatic garage door
openers with controls, television antennas, water softeners, built -in dishwashers, garbage disposals, built-in trash compactors, built-in
ovens and cooking stoves, hood -fans, intercoms, installed carpeting, work benches, security systems, and also the following property:
_____
_____
_____

Upon delivery of the Deed, Seller shall also deliver a Warranty Bill of Sale for the above personal property.  (Check the box if the
following provision Applies to this Purchase Agreement) :  ☐ Seller shall use M.S.B.A. Real Property Form No. 90 (1997), Warranty
Bill of Sale.

5. PRICE AND TERMS.   The price for the real and personal property included in this sale is
__Two Hundred Seventy-Five Thousand and no/100_____ Dollars ($275,000 ), ___268,000__
which Buyer shall pay as follows:

Earnest money of $_____0_____ by (CASH, CHECK, NOTE –state which) _____NA_____ payable to
(Select one):
☐ Seller, to be deposited and held by Seller (and may be commingled with Seller's other funds) pending closing,
☐ Seller's lawyer, to be deposited and held in the lawyer's trust account pending closing,
☐ Seller's broker, to be deposited or held by broker according to the requirements of Minnesota Statutes,
☐ Other (describe how the earnest money will be held) _____

receipt of which is hereby acknowledged and $ __38,050____ cash, on __May 9, 2005__, the DATE OF CLOSING, and
the balance of $ _236,950_ by financing as shown on the attached Financing Addendum.

6. DEED/MARKETABLE TITLE. Upon performance by B uyer, Seller shall execute and deliver a __General__ Warranty Deed,
joined in by spouse, if any, conveying marketable title of record, subject to:
A. Building and zoning laws, ordinances, state and federal regulations;
B. Restrictions relating to use of improvements of the real property without effective forfeiture provisions;
C. Reservation of any mineral rights by the State of Minnesota;
D. Utility and drainage easements which do not interfere with existing improvements;



EXHIBIT
A

E. Exceptions to title which constitute encumbrances, restrictions, or easements which have been disclosed to Buyer and accepted by Buyer in this Purchase Agreement *(must be specified in writing):* ____________________

7. REAL EATATE TAX AND SPECIAL ASSESSMENTS. Real estate taxes due and payable in and for the year of closing shall be prorated between Seller and Buyer on the calendar year basis to the actual Date of Closing, unless otherwise provided in this Purchase Agreement. If tax statements for such taxes are not available on the Date of Closing, the amount to be prorated shall be 100% of the prior year's taxes, and such estimated proration shall be *(strike one)* ~~FULL AND FINAL BETWEEN SELLER AND BUYER~~ / ADUSTED UPON RECEIPT OF THE ACTUAL TAX STATEMENTS FOR SUCH YEAR (in which case the party entitled to a credit as a result of the adjustment shall receive the amount of such credit fro m the other party within 30 days of the issuance of the tax statements). Seller represents the taxes due and payable in the year(s) 2005 will be FULL ~~PART, NON~~ – homestead classification, unless Buyer changes the tax classification for taxes pay able in the year following closing by taking possession of the real property as Buyer's homestead and filing a new homestead declaration within the time required by law. If the taxes due and payable in the year of closing are PART or NON -homestead classification, Seller shall pay to Buyer at closing $ 0 , in addition to Seller's prorated share of the taxes. If the taxes due and payable in the year following closing are PART or NON -homestead classification and the closing takes place after the date by which Buyer must take possession of the real property as Buyer's homestead to file for homestead tax status for taxes due and payable in such year, Seller shall pay to Buyer at closing $ 0 , as Seller's share of such taxes.

*(Strike one):* ~~BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING~~ / SELLER SHALL PAY ON DATE OF CLOSING all installments of special assessments certified for payment with the real estate taxes due and payable in the year of closing.

*(Strike one):* ~~BUYER SHALL ASSUME~~ / SELLER SHALL PAY ON DATE OF CLOSING all other special assessments levied as of the date of this Purchase Agreement.

*(Strike one):* ~~BUYER SHALL ASSUME~~ / SELLER SHALL PROVIDE FOR PAYMENT OF special assessments pending as of the date of this Purchase Agreement fo r improvements that have been ordered by the City Council or other governmental assessing authorities. (Seller's provision for payment shall be by payment into escrow of 1 ½ times the estimated amount of the assessments.) As of the date of this Purchase Agreement, Seller represents that Seller has not received a Notice of Hearing of a new public improvement project from any governmental assessing authority, the costs of which project may be assessed against the real property. If a special assessment becomes pending after the date of this Purchase Agreement and before the Date of Closing, Buyer may, at Buyer's option:

A. Assume payment of the pending special assessment without adjustment to the purchase price of the real property; or

B. Require Seller to pay the pending special assessment (or escrow for payment of same as provided above) and Buyer shall pay a commensurate increase in the purchase price of the real property, which increase shall be the same as the estimated amount of the assessment; or

C. Declare this Purchase Agreement void by notice to Seller, and earnest money shall be refunded to Buyer.

*(Strike one):* ~~BUYER SHALL~~ / SELLER SHALL PAY ON DATE OF CLOSING any deferred real estate taxes (including "Green Acres" taxes under MINN. STAT. #273.111) or special assessments payment of which is required as a result of the closing of this sale. Buyer shall pay real estate taxes due and payable in the year following closing and thereafter and any unpaid special a ssessments payable therewith and thereafter, the payment of which is not otherwise provided herein. Seller makes no representation concerning the amount of future real estate taxes or of future special assessments.

8. DAMAGES TO REAL PROPERTY. If the real property is substantially damaged prior t closing, this Purchase Agreement shall terminate and the earnest money shall be refunded to Buyer. If the real property is damaged materially buy less than substantially prior to closing, Buyer may rescind thi s Purchase Agreement by notice to Seller within 21 days after Seller notifies Buyer of such damage, during which 21 -day period Buyer may inspect the real property, and in the event of such rescission, the earnest money shall be refunded to Buyer.

9. SELLER'S BOUNDARY LINE, ACCESS, RESTRICTIONS AND LIEN WARRANTIES. Seller warrants the building. If any, are entirely within the boundary lines of the real property, Seller warrants that there is a right of access to the real property from a public right of way. Seller warrants that there has been no labor or material furnished to the real property of which payment has not been made. Seller warrants that there are no present violations of any restrictions relating to the use or improvement of real property. These warranties shall survive the delivery of the Deed of Contract for Deed.

10. CONDITION OF PROPERTY

A. Seller warrants that all appliances, fixtures, heating and air conditioning equipment, fireplaces (including mechanisms, dampers, flues, and doors), wiring, and plumbing used and located on the real property are in working order on the Date of Closing. Seller represents that the property ~~has~~/ has not had a wet basement or water in the basement. Seller discloses that the roof ~~has~~/ has not leaked, Seller warrants that the property: is / ~~is not~~ connected to: city sewer *(strike one)* -YES ~~/NO~~; city water – YES ~~/NO~~; cable TV – YES ~~/NO~~. Seller shall remove all debris and all personal property not included in this sale from the real property before possession date. Seller has not received any notice from any governmental authority as to the existence of any Dutch elm disease, oak wilt, or other disease of any trees on the real property.

B. Seller knows of no hazardous substances or petroleum products having been placed, stored, or released from or on the real property by any person in violation of any law, nor of any underground storage tanks having been located on the real property at any time, except as follows:

NONE

C. Seller's warranties and representations contained in this paragraph 10 shall survive the delivery of the Deed or Contract for Deed, provided that any notice of a defect or claim of breach of warranty must be in writing and any such notice with respect to Matters referred to in A., above must be given by Buyer to Seller within one year of the Date of Closing or be deemed waived.

D. Buyer shall have the right to have inspections of the property conducted prio r to closing. Unless required by local ordinance or Lending regulations, Seller does not plan to have the property inspected. Other than the representations made in this paragraph 10, the property is being sold "AS IS" with no express or implied represe ntations or warranties by Seller as to physical conditions, quality of construction, workmanship, or fitness for any particular purpose. (This paragraph is not intended to waive or limit any provisions of MINN. STAT., Chapter 327A.)

11. DISCLOSURE OF NOTICES. Seller has not received any notice from any governmental authority as to violation of any law, ordinance or regulation affecting the real property. If the real property is subject to restrictive covenants, Seller has not received any notice from any person as to a breach of the covenants. Seller has not received any notice from any governmental authority concerning any eminent domain, condemnation, special taxing district, or rezoning proceedings.

12. TRUTH-IN-HOUSING. Buyer acknowledges receipt of the Truth -in-housing Disclosure Report or other inspection report if required by the municipality in which the real property is located.

13. POSSESSION. Seller shall deliver possession of the property not later than __at the time of__ closing. All interest, fuel oil, liquid petroleum gas, and all charges for city water, city sewer, electricity, and natural gas shall be prorated between the parties as of __the day of closing__.

14. EXAMINATION OF TITLE. To demonstrate that Seller's title is good and marketable of record, within a reasonable time after acceptance of this Purchase Agreement, Seller shall furnish Buyer with an Abstract of Title or a Registered Property Abstract certified to date including proper searches covering bankruptcies and state and federal judgments, federal court judgment liens in favor o f the U.S., liens and levied and pending special assessments. Buyer shall have ten (10) business days after receipt of the Abstract of Title or Registered Property Abstract either to have Buyer's lawyer examine the title and provide Seller with w ritten objection or, at Buyer's own expense, to make an application for a title insurance policy and notify Seller of the application. Buyer shall have ten (10) business days after receipt of the Commitment for Title Insurance to provide Seller with a copy of the Commitment and written objections. Buyer shall be deemed to have waived any title objections not made within the ten (10) day period above, except that this shall not operate as a waiver of Seller's covenant to deliver a Statu tory Warranty Deed, unless a Warranty Deed is not specified above. If Buyer obtains title insurance, Buyer is not waiving the right to obtain a good and marketable title of record from Seller.

15. TITLE CORRECTIONS AND REMEDIES. Seller shall have 120 days from receipt of Buyer's written title objections to make title marketable. Upon receipt of Buyer's title objections, Seller shall, within ten (10) business days, notify Buyer of Seller's intention to make title marketable within 120-day period. Liens or encumbrances for liquidated amounts, which can be released by payment or escrow from proceeds of closing shall not delay the closing. Cure of the defects by Seller shall be reasonable, diligent, and prompt. Pending correction of title, all payments required herein and the closing shall be postponed.
   A. If notice is given and Seller makes title marketable, then upon presentation to Buyer and proposed lender of documentation Establishing that title has been made m arketable, and if not objected to in the same time and manner as the original title objections, the closing shall take place within ten (10) business days or on the scheduled closing date, whichever is later.
   B. If notice is given and Seller procee ds in good faith to make title marketable but the 120 day period expires without title being made marketable, Buyer may declare this Purchase Agreement void by notice to Seller, neither party shall be liable for damages hereunder to the other, and earnest money shall be refunded to Buyer.
   C. If Seller does not give notice of intention to make title marketable, or if notice is given but the 120 day period expires without title being made marketable due to Seller's failure to proceed in goo d faith, Buyer may seek, as permitted by law, one or more of the following:
      1. Proceed to closing without waiver or merger in the Deed of the objections to title and without waiver of any remedies, and may:
         (a) Seek damages, costs, and reasonable lawyer's fees from Seller as permitted by law (damages under this subparagraph (a) shall be limited to the cost of curing objections to title, and consequential damages are excluded); or
         (b) Undertake proceedings to correct the objections to title;
      2. Rescission of this Purchase Agreement by notice as provided herein, in which case the Purchase Agreement shall be null and void and all earnest money paid shall be refunded to Buyer;
      3. Damages from Seller together with costs and reasonable lawyer's fees, as permitted by law;
      4. Specific performance within six months after such right of action arises.
   D. If title is marketable, or is made marketable as provided herein, and Buyer defaults in any of the agreements herein, Seller may elect either of the following options, as permitted by law:
      1. Cancel this contract as provided b statute and let ain all payments made hereunder as liquidated damages. The parties acknowledge their intention that any note given pursuant to this contract is a down payment note, and may be presented for payment notwithstanding cancel lation;
      2. Seek specific performance within six months after such right of action arises, including costs and reasonable lawyer's fees, as permitted by law.
   E. If title is marketable, or is made marketable as provided herein, and Seller de faults in any of the agreements herein, Buyer may, as permitted by law.
      1. Seek damages from Seller including costs and reasonable lawyer's fees;
      2. Seek specific performance within six months after such right of action arises.

16. NOTICES. All notices required herein shall be in writing and delivered personally or mailed to the address as shown at Paragraph 1 above and, if mailed, are effective as of the date of mailing.

17. SUBDIVISION OF LAND. If this sale constitutes or requires a subdivision of land owned by Seller, Seller shall pay all subdivision expenses and obtain all necessary governmental approvals. Seller warrants that the legal description of the real property to be conveyed has been or will be approved for recording as of the Date of Closing.

18. MINNESOTA LAW. The laws of the State of Minnesota shall govern this contract.

19. WELL DISCLOSURE. *(Check one of the following):*
  __X__ Seller certifies that Seller does not know of any wells on the real property.
  _____ Wells on the real property are disclosed by Seller on the attached Well Disclosure form.

20. SEWAGE TREATMENT SYSTEM DISCLOSURE.
*(Check either A or B):*
  __✓__ A. Seller certifies that sewage generated at the property goes to a facility permitted by the Minnesota Pollution Control Agency (for example, a city or municipal sewer system).
  _____ B. Seller certifies that sewage generated at the property does not go to a facility permitted by the Minnesota Pollution Control Agency and Seller's Disclosure of Individual Sewage Treatment System is attached (attach form).
*(Check either C or D):*
  __X__ C. Seller does not know if there is an abandoned individual sewage treatment system on the property.
  _____ D. Seller knows that there *(strike one):* are / are no abandoned individual sewage treatment systems on the property. If Seller discloses the existence of an abandoned individual sewage treatment system on the property, then Minnesota law requires that the location of the system be disclosed to B uyer with a map. *(Attached Seller's Disclosure of Individual Sewage Treatment System with map completed.)*

21. LEAD PAINT DISCLOSURE. *(Check one of the following):*
  _____ Seller represents that the dwelling was construct ed on the real property in 1978 or later.
  __✓__ Seller represents that the dwelling was constructed on the real property before 1978. (If such housing is located on the real property, attached and made a par t of this Purchase Agreement is "LEAD PAINT ADDENDUM FOR HOUSING CONSTRUCTED BEFORE 1978".)

22. WETLANDS, SHORELAND, AND FLOOD PLAIN CONCERNS. Currently the law does not require Seller to disclose Seller knowledge, if any, of the existence of wetlands, shore land, or flood plains on or affecting the real property. If Buyer has not already investigated these concerns, Buyer might want to include Seller's disclosure regarding these concerns. *(Check the box if the following provision applies to this Purchase Agreement):* ☐ ADDENDUM TO PURCHASE AGREEMENT: WETLANDS, SHORELAND AND FLOOD PLAIN DISCLOSURE,M.S.B.A. Real Property Form No. 8 (1997) is included as an addendum to this Purchase Agreement.

Form No. 262    MN Standard Residential Purchase Agreement (Rev. August, 1997)

Purchase Agreement / PAGE 4

228 23. SELLER'S AFFIDAVIT. At closing, Seller shall supplement the warranties and representations in this Purchase Agreement by
229 executing and delivering a Minnesota Uniform Conveyance Blank (Form No. 116-M, 117-M, or 118-M) Affidavit of Seller.
230

231 24. CLOSING. Closing shall be at the office of Seller's lawyer, Buyer's title insurer, or at some other mutually agreeable location.
232

233 *(State other location):*    **title company of buyers choice**
234 At closing, Seller and Buyer shall disclose their Social Security Numbers or Federal Tax Identification Numbers for the purpose of
235 Completing State and federal tax forms.
236

237 25. ADDITIONAL TERMS. _____
238
239                                                                           208,000
240 **Buyer has exclusive option to terminate this agreement if appraised value of $275,000 or**
241 **more is not obtained by buyers appraiser. Seller agrees to pay all of buyers closing costs (or**
242 **the maximum allowed by buyers lender.)**
243

244 **Seller is aware that buyer(s) are licensed real estate professional(s) with Real Estate**
245 **Enhancement Group.**
246
247
248
249

250 26. ADDENDA. Attached are ____0____ addenda, which are made a part of this Purchase Agreement.
251

252 27. TIME IS OF THE ESSENCE. Time is of the essence for all provisions of this Purchase Agreement.
253

254 28. MULTIPLE ORIGINALS. Seller and Buyer have signed *(number)* ____1____ originals of this Purchase Agreement.
255

259 THIS IS A LEGALLY BINDING CONTRACT. BEFORE SIGNING, CONSULT A LAWYER. Minnesota law permits licensed
260 real estate brokers and sales agents to prepare purchase agreements. No recommendation or representation may be made by any real
261 estate broker or sales agent as to the legal sufficiency, the legal affect, or the tax consequences of this contract. These are questions
262 for your lawyer.
263

I agree to sell the property for the price and terms and conditions set forth above.

SELLER: _____ 5/9/05
                                         Date

SELLER: _Edith A Jones_ 5/9/05
                                         Date

State of Minnesota        )
                                    )ss.
County of _Hennepin_    )

The foregoing instrument was acknowledged before me this 9th day of May, 2005, by Michael E. and Edith A Jones, a married couple, Seller(s).

_Christine L Conati_
Notary Public

NOTARIAL STAMP OR SEAL (OR OTHER TITLE OR RANK)

CHRISTINE L CONATI
Notary Public
Minnesota
My Commission Expires January 31, 2010

Drafted By:
Real Estate Enhancement Group, L.L.C.
6200 Baker Rd, Suite 200
Eden Prairie, MN 55346
952-417-0030

I agree to purchase the property for the price and terms and conditions set forth above.

BUYER: _____
                                         Date

BUYER: _____
                                         Date

State of Minnesota        )
                                    )ss.
County of _____    )

The foregoing instrument was acknowledged before me this ____ day of _____, 200__, by _____ and _____, Purchaser(s).

_____
Notary Public

NOTARIAL STAMP OR SEAL (OR OTHER TITLE OR RANK)

## Addendum to Purchase Agreement

Addendum to Purchase agreement between parties dated April 19, 2005 pertaining to the purchase and sale of the property at 7451 27th St Circle N, Oakdale, MN 55128.

Seller is aware that Buyers are licensed real estate professionals with Real Estate Enhancement Group, LLC.

Seller is aware that if Buyers purchase the home and Sellers are vacating the property, voluntarily or involuntarily, the Buyers may sell the home for substantially more.

_____ 5/9/05      _____
(Seller)                 (date)      (Buyer)                 (date)

_Edith A Jones_ 5/9/05               _____
(Seller)                 (date)      (Buyer)                 (date)

NOTICE OF CANCELLATION

April 19, 2005 or —

YOU MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE
WITHOUT ANY PENALTY OR OBLIGATION, AT ANY TIME BEFORE

April 26, 2005

OR NO LATER THAN 8:OO A.M. ON

---

WHICHEVER IS EARLIER.

TO CANCEL THIS TRANSACTION, PERSONALLY DELIVER A SIGNED AND
DATED COPY OF THIS NOTICE TO

REAL ESTATE EQUITY STRATEGIES, L.L.C.
AT
6200 Baker Rd, Suite 200
Eden Prairie, MN  55346

NO LATER THAN

April 26, 2005

OR NO LATER THAN 8:OO A.M. ON

---

WHICHEVER IS EARLIER.

I HEREBY CANCEL THIS TRANSACTION _____.
                                        (DATE)


_____          _____
PRINT NAME                        PRINT NAME

_____          _____
SIGNATURE NAME                    SIGNATURE NAME

## Real Estate Equity Strategies, L.L.C.
## PRE-NEGOTIATION DISCLOSURE.

Real Estate Equity Strategies, L.L.C., (known from this point forward as REES) is in the business of assisting people who may be losing all or some of their interest in real estate (Property) after the foreclosure sale of a mortgage or other lien by one of their creditors. Your signature below is an acknowledgement and a promise to REES that you have determined, without any advice from REES, that you are likely to lose your interest in your property without the involvement of REES as provided herein.

**By signing below:**

1.  You acknowledge and represent to REES that you have defaulted in your obligations to a creditor; that your creditor commenced the foreclosure of your interest in your Property pursuant to Minnesota law; that a foreclosure sale was held; and that the statutory period for you to redeem, that is to buy back your Property from the creditor, is about to end, which will completely and irrevocably terminate your interest in your Property;

2.  You represent and promise to REES that you have been advised and/or otherwise understand the foreclosure process that you are involved in and that further understand that neither REES nor any employee or agent of the same will provide you with any advice, legal or otherwise, as to how you should proceed, except that you represent and promise to REES that you are being advised by REES to:

    a.  obtain legal counsel regarding this transaction and that you either did or have chosen not to do so of your own free will; and
    b.  seek counseling from whatever agencies, government or otherwise, designed to advise parties who are in the process of losing their interest in their property pursuant to a foreclosure, including, but not limited to, the Mortgage Foreclosure Prevention Society or a similar organization.

3.  You represent and promise that you have already contacted other entities, loan brokers, realtors and lenders in an attempt to refinance, sell and/or otherwise obtain aid to prevent you from losing your Property and were unsuccessful. You acknowledge that REES has not and will not assist you in any way in contacting those other persons or entities and that REES had and has no responsibility for your inability to obtain aid from those other persons or entities. While you may have been referred to REES by some other person or entity from which you sought aid, you represent and warrant that you understand that REES has no affiliation with those referring persons or entities.

4.  You represent and warrant by your signature below that you have sought out and requested the aid of REES and that REES's method of aiding you has been fully explained to you and that you understand it, including but not limited to the following:

    a.  At the closing, you will transfer your property to REES for a nominal amount of cash, payable to you, which will allow REES to redeem the Property by paying off your foreclosed loan, but in its own name, and not your name.
    b.  After buying the Property and taking full ownership of the Property, REES has agreed to sell the Property back to you pursuant to either a Contract for Deed or a Lease of the Property with an Option to Purchase.

5.  If you and REES enter into a Contract for Deed, you acknowledge, agree and promise that you have been told and understand that the Contract for Deed it is not intended to be a loan and a mortgage securing repayment of a debt to REES, but that your interest in the Property was terminated by the sale to REES and/or the foreclosure process commenced by your creditor. You represent and warrant that you understand that if you do not perform pursuant to the express terms of the Contract for Deed, REES will be entitled to cancel the Contract for Deed under Minnesota law and terminate the new interest in the Property you obtained as a result of the Contract for Deed.

6.  If you and REES enter into a Lease, you acknowledge, agree and promise that you have been told and understand that the Lease is not intended to be a loan and a mortgage securing repayment of a debt to REES, but that your interest in the Property was terminated by the sale to REES and/or the foreclosure process commenced by your creditor. You further acknowledge and agree that REES purchased the Property *and is the owner of it and that you have agreed to lease the Property as a tenant.* You acknowledge that you will be required to fully comply with the express terms of the Lease, not limited to the payment of rent specified in the Lease but with all other conditions contained therein. If you do not comply with the terms of the Lease, you acknowledge and agree that your Lease will be terminated in accordance with Minnesota law and that you will have no interest in the Property whatsoever. You can be evicted and REES will remain the owner of the Property instead.

**Real Estate Equity Strategies, L.L.C.**

By:_____

Its:_____

[Michael E. Jones]

[Edith A. Jones]

Sworn and subscribed to before me this
_____ day of _____, 2005.

_____
Notary Public

| Notarial Stamp or Seal (or other title or rank) |
|---|
|  |

Sworn and subscribed to before me this
_____ day of _____, 2005.

_____
Notary Public

| Notarial Stamp or Seal ( or other title or rank) |
|---|
|  |

EXHIBIT
B
tabbies

Entity ID_____    Time Received_____

**Contract for Deed Proposal agreement dated April 19, 2005**
**(for the property at 7451 27th St Circle N, Oakdale, MN 55128)**



1. **Seller:** Real Estate Equity Strategies, L.L.C. (further known as REES)
   **Seller Address:** 6200 Baker Road, Suite 200, Eden Prairie, MN 55346
   **Seller Phone:** 952-417-0030
   **Buyer:** Michael E. and Edith A. Jones
   **Property address:** 7451 27th St Circle N, Oakdale, MN 55128

2. I/We understand that our monthly housing payment will be **approximately $2005** ($1777 base interest only payment, $100 *estimate* dwelling insurance, $128 for *2005* property taxes) per month AND the payment may increase or decrease due to changes in property taxes and/or hazard insurance and/or flood insurance, if required.



3. I / We understand that our personal items in the property will NOT be covered under the new Dwelling Policy purchased by REES, L.L.C. on the closing date. I/we am/are responsible to provide contents insurance to protect my possessions from perils. I/we may be entitled to or required to obtain my/our own homeowners insurance policy anytime on or after I/we receive my/our fully executed contract for deed.

4. I/We understand the house payment does not include ANY other expenses relating to the property and that we take full responsibility for any and all other expenses including, but not limited to: contents insurance, water, sewer, trash, electric, gas and telephone bills. Also weed, grass, snow and debris removal, municipal hookup or any other fees imposed by a municipality or court.



5. Because of the unique circumstances of this transaction, I/we agree to hold harmless Chad Banken, Nick Dzandzara, REES, L.L.C., and any/all related parties from legal action or issues pertaining to the acquisition, sale, and/or leasing of this property. Further, I/we agree that any and all legal fees incurred by REES to uphold, enforce, cancel, or otherwise to keep this agreement in effect are our sole responsibility and agree to reimburse REES for all such fees and expenses.

6. REES will provide my contract for deed with the following terms:
   - Approximate Contract for Deed amount to be $275,000. Detailed as follows:

     | | |
     |---|---|
     | $275,000 | Estimated contract price |
     | $ 38,050 | Less down payment |
     | $236,950 | Estimated contract balance |

     ($218,000 estimated payoff of mortgages, sellers closing costs and consultant's fee if any, $18,950 estimated REES Fee (7.999% of $236,950))

     *Note: figures listed above are estimates used for transaction qualification. Figures may change upon receipt of actual payoffs*
   - The Contract for Deed interest rate will be calculated at 9.00% interest per year.
   - Payments will be interest only
   - The Contract for Deed will balloon in 5 years (approximately May 2010)
   - REES may at any time prior to or after closing assign it's rights to the purchase agreement and/or the contract for deed to an individual or entity.
   - Our monthly interest only payment will be **approximately $1777**, plus taxes and insurance.
   - **We agree to purchase the property AS-IS**



7. First payment will be due June 1, 2005, and may be prorated if necessary.

8. Contract for Deed will be made no less than 60 days from the purchase of the property by REES. I/we agree that before I receive the contract for deed, I am a tenant only and am subject to landlord-tenant law. I/we also agree that before I receive the contract for deed that we must be current with all payments due up to that point, including but not limited to monthly payments, late fee's, nsf fee's, additional legal fee's.



9. I / We acknowledge that we have received the following documents and have read them, although I/We have not signed them during the cancellation period:
   - ❖ Pre-negotiation Disclosure
   - ❖ Signature Authorization (2)
   - ❖ Lease
   - ❖ Financial Privacy Policy
   - ❖ Contract for Deed Proposal (this document)
   - ❖ Purchase Agreement
   - ❖ Cancellation Agreement



EXHIBIT

C

CONTRACT FOR DEED PROPOSAL
Dated: <u>April 19, 2005</u>
Property: <u>7451 27th St Circle N, Oakdale, MN  55128</u>

---

**NOTICE:  REQUIRED BY MINNESOTA LAW**
Until your right to cancel this contract has ended, Real Estate Equity Strategies, LLC
Or anyone working for Real Estate Equity Strategies, LLC CAN NOT ask you to sign or have
you sign any deed or other document.

---

You may cancel this contract for the sale of your house without any penalty or obligation at
any time before midnight on April 25, 2005.  See the attached notice of cancellation form
for an explanation of this right.

---

Michael E. Jones                                                5/9/05
                                                                Date

Edith A. Jones                                                  5/9/05
                                                                Date


Real Estate Equity Strategies, LLC

By_____         _____
                                           Date

## RESIDENTIAL REAL ESTATE LEASE

This Lease Agreement (this "Lease") is made effective as of **May 9, 2005**, by and between **Real Estate Equity Strategies, LLC**, ("Landlord"), and Michael E. and Edith A. Jones,, ("Tenants"). The Parties agree as follows:

PREMISES. Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant the property located at 7451 27th St Circle N, Oakdale, MN  55128 (the "Premises").

OCCUPANTS. The premises may not be occupied by more than 4 person(s) unless prior written consent of the Landlord is obtained.

TERM. The lease term will begin on **May 12, 2005.** This lease will be month-to-month, for a total of up to 12 months.

LEASE PAYMENTS.  Tenant shall pay to Landlord monthly payments of **$2005** per month, payable in advance on the First (1st) day of each month.  Lease payments shall be made to the Landlord at 6200 Baker Road, Suite 200, Eden Prairie, MN 55346, which may be changed from time to time by the Landlord. Monthly lease payments will increase by the amount of any increase in real estate taxes and Landlord's insurance on the property.

LATE PAYMENTS.  Tenant shall pay a late fee equal to $50 per week, beginning the 8th, 15th, 22nd, and 29th day of each month.  Postmark will determine date payment is received and amount of late fee.

NON-SUFFICIENT FUNDS.  Tenant shall be charged $30 for each check that is returned to the Landlord for lack of sufficient funds or any other non-payment by Tenant's bank.

SECURITY DEPOSIT. At the time of signing of this Lease, Tenant shall pay Landlord, in trust, a security deposit of **$ 0**  to be held and disbursed for Tenant damages to Premises or amounts due under this lease (if any) as provided by law.

POSSESSION. Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing.

USE OF PREMISES/ABSENCES.  Tenant shall occupy and use Premises as a dwelling unit.  Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.

MAINTENANCE. Tenant shall have the responsibility to maintain the Premises in good repair at all times.

ACCESS BY LANDLORD TO PREMISES.  Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgages, Tenants or workers. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent.  **For any reason, other than emergency or required by law, Landlord will give Tenant at least 24 hour's notice prior to entering premises.**  Access must be made available if necessary.

UTILITIES AND SERVICES. Tenant shall be responsible for timely payment for all utilities and services in connection with the Premises.

PROPERTY INSURANCE.  Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant shall provide proof of insurance upon request. Tenant's insurance policy shall contain a waiver of subrogation against Landlord.

DANGEROUS MATERIALS.  Tenant shall not keep or have on the Premises any article or thing of a dangerous, hazardous, inflammable, or explosive character that might substantially increase the danger of fire or other hazardous condition on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

DESTRUCTION OR CONDEMNATION OF PREMISES. If the Premises are partially destroyed in a manner that prevents the conducting of Tenant's use of the Premises in a normal manner, and if the damage is reasonably repairable within sixty days after the occurrence of the destruction, and if the cost of repair is less than $200, Landlord shall repair the Premises. However, if the damage is not repairable within sixty days, or if the cost of repair is $201 or more, or if Landlord is prevented from repairing the damage by forces beyond Landlord's control, or if the property is condemned, this Lease shall terminate upon twenty days' written notice of such event or condition by either party.

Tenants initials

EXHIBIT

D

DEFAULTS. Tenant shall be in default of this Lease, if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. If Tenant fails to cure any financial obligation within 15 days (or any other obligation within 30 days) after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice. In the alternative, Landlord may elect to cure and default and the cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses suffered by Landlord by reason of Tenant's defaults, including court costs and reasonable attorney's fees. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent".

HABITABILITY. Tenant has been occupying the Premises, and Tenant has inspected the Premises and fixtures (or has had the Premises inspected on behalf of Tenant), and acknowledges that the Premises are in reasonable and acceptable condition of habitability for their intended use, and the agreed lease payments are fair and reasonable. If the condition changes so that, in Tenant's opinion, the habitability and rental value of the Premises are adversely affected, Tenant shall promptly provide reasonable notice to Landlord.

PETS. The Tenant is permitted to have on the Premises: _____No additional pets shall be allowed without the prior written consent of the Landlord. At the time of signing this Lease, Tenant shall pay to Landlord, in trust, a deposit of $____, to be held and disbursed for pet damages to Premises (if any) as provided by law. This deposit is an addition to any other security deposit stated in this Lease.

ASSIGNABILITY/SUBLETTING. Tenant may not assign or sublease any interest in the Premises with out the prior written consent of Landlord.

NOTICE. Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows:

LANDLORD:      Real Estate Equity Strategies, L.L.C.
                6200 Baker Road, Suite 200, Eden Prairie, MN 55346
                952-417-0000

TENANT:         Michael E. and Edith A. Jones
                7451 27th St Circle N, Oakdale, MN 55128
                phone # : _____

Such address may be changed from time to time by either party by providing notice as set forth above.

ENTIRE AGREEMENT/AMENDMENT. This Lease Agreement contains the entire Lease agreement of the parties and there are no other promises or conditions unless in writing. This Lease may be modified or amended only in writing, if the writing is signed by all parties to this agreement.

SEVERABILITY. If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid or enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

CUMULATIVE RIGHTS. The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

GOVERNING LAW. This Lease shall be construed in accordance with the laws of the State of Minnesota.

SUBORDINATION OF LEASE. This Lease is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Premises.

**Tenant has inspected the Premises and states that the Premises are in satisfactory condition, and accept the property as is.**

Signature: _____ DATE: 5/9/05

Signature: _____ DATE: 5/9/05

Landlord: _____ DATE: _____
Real Estate Equity Strategies, L.L.C., Representative

REV040803

Tenants initials _____ _____

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☒ Conv Unins | | 6. File Number | 7. Loan Number | 8. Mortgage Ins Case Number |
| 4. ☐ VA   5. ☐ Conv Ins.   6. ☐ Seller Finance | | 0503552 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| REES-MAX, LLC. | Michael E. Jones and Edith A. Jones, husband and wife<br>7451 27th Street Circle North<br>Oakdale, MN 55128 | Central Bank<br>6640 Shady Oak Road<br>Eden Prairie, MN 55344 |

| G. Property Location | H. Settlement Agent Name | |
|---|---|---|
| Lot 10, Block 1, Hillvale 1st Addition, Washington County, MN.<br>7451 27th Street Circle North<br>Oakdale, MN 55128 | Title One, Inc.<br>3800 American Boulevard W, Suite 700<br>Bloomington, MN 55431  Tax ID: 41-1724088 | |
| | Place of Settlement<br>Title One, Inc. - Roseville<br>1970 Oakcrest Avenue, Suite 108<br>Roseville, MN 55113 | I. Settlement Date<br>6/2/2005<br>Fund: 6/2/2005 |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | |
|---|---|---|---|---|
| 100. Gross Amount Due from Borrower | | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | | | 401. Contract Sales Price | $268,000.00 |
| 102. Personal Property | | | 402. Personal Property | |
| 103. Settlement Charges to borrower (1400) | | | 403. | |
| 104. | | | 404. | |
| 105. | | | 405. | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | |
| 106. City property taxes | | | 406. City property taxes | |
| 107. County property taxes   06/02/05 to 07/01/05 | | | 407. County property taxes   06/02/05 to 07/01/05 | $129.67 |
| 108. Yearly proration | | | 408. Yearly proration | |
| 109. Semiannual proration | | | 409. Semiannual proration | |
| 110. Quarterly proration | | | 410. Quarterly proration | |
| 111. HOA | | | 411. HOA | |
| 112. | | | 412. | |
| 113. | | | 413. | |
| 114. | | | 414. | |
| 115. | | | 415. | |
| 116. | | | 416. | |
| 120. Gross Amount Due From Borrower | | | 420. Gross Amount Due to Seller | $268,129.67 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | | 502. Settlement Charges to Seller (line 1400) | $1,754.15 |
| 203. Existing loan(s) taken subject to | | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | | 504. Payoff Reiter & Schiller | $215,871.18 |
| 205. | | | 505. Payoff of second mortgage loan | |
| 206. | | | 506. | |
| 207. | | | 507. Rees Fee | $18,912.34 |
| 208. | | | 508. Rees DP | $33,092.00 |
| 209. | | | 509. 1st 1/2 2005 RE TAXES PAID $816.00/POC | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | |
| 210. City property taxes | | | 510. City property taxes | |
| 211. County property taxes | | | 511. County property taxes | |
| 212. Yearly proration | | | 512. Yearly proration | |
| 213. Semiannual proration | | | 513. Semiannual proration | |
| 214. Quarterly proration | | | 514. Quarterly proration | |
| 215. HOA | | | 515. HOA | |
| 216. | | | 516. | |
| 217. | | | 517. | |
| 218. | | | 518. | |
| 219. | | | 519. | |
| 220. Total Paid By/For Borrower | | | 520. Total Reduction Amount Due Seller | $269,629.67 |
| 300. Cash At Settlement From/To Borrower | | | 600. Cash At Settlement To/From Seller | |
| 301. Gross Amount due from borrower (line 120) | | | 601. Gross Amount due to seller (line 420) | $268,129.67 |
| 302. Less amounts paid by/for borrower (line 220) | | | 602. Less reductions in amt. due seller (line 520) | $269,629.67 |
| 303. Cash From Borrower | | | 603. Cash From Seller | $1,500.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.


EXHIBIT
E

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $0.00 @ % = $0.00 | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | | |
| 703. Commission Paid at Settlement | | | $0.00 |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee 1% | to Central Bank | | |
| 802. Loan Discount % | to | | |
| 803. Appraisal Fee | to | | |
| 804. Credit Report | to | | |
| 805. Lender's Inspection Fee | to | | |
| 806. Mortgage Insurance Application | to | | |
| 807. Assumption Fee | to | | |
| 808. Flood Certification Fee | to Central Bank | | |
| 809. Commitment Fee | to | | |
| 810. Underwriting Fee | to | | |
| 811. Processing Fee | to | | |
| 900. Items Required by Lender To Be Paid in Advance | | | |
| 901. Interest from to @ $0/day | | | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for 1 years to Auto-Owners Insurance | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard insurance | months @ per month | | |
| 1002. Mortgage insurance | months @ per month | | |
| 1003. City property taxes | months @ per month | | |
| 1004. County property taxes | months @ per month | | |
| 1005. Yearly proration | months @ per month | | |
| 1006. Semi annual proration | months @ per month | | |
| 1007. Quarterly proration | months @ per month | | |
| 1008. HOA | months @ per month | | |
| 1011. Aggregate Adjustment | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee | to Title One, Inc. | | $165.00 |
| 1102. Abstract or title search | to Title One, Inc. | | $300.00 |
| 1103. Title examination | to Title One, Inc. | | |
| 1104. Title insurance binder | to | | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to | | |
| (includes above items numbers: ) | | | |
| 1108. Title insurance | to Title One, Inc. | | $294.75 |
| (includes above items numbers: ) | | | |
| 1109. Lender's coverage | $214,400.00/$426.25 | | |
| 1110. Owner's coverage | $268,000.00/$294.75 | | |
| 1111. Plat Drawing and Exam | to Title One, Inc. | | |
| 1112. Name Search and Review | to Title One, Inc. | | |
| 1113. Special Assessment Search/Analysis | to Title One, Inc. | | $35.00 |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording Fees Deed $19.50 ; Mortgage $24.50 ; Rel $19.50 to Title One Recording | | | $19.50 |
| 1202. City/county tax/stamps Deed ; Mortgage to | | | |
| 1203. State Mortgage Registration Tax Deed ; Mortgage $493.12 to Washington County Treasurer | | | |
| 1204. MN State Deed Tax to Washington County Treasurer | | | $884.40 |
| 1205. Conservation Fee to Washington County Treasurer | | | $5.00 |
| 1206. Rec. Assignment to Title One Recording | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. Package Processing Fee | to Title One, Inc. | | |
| 1304. Recording Service Fee | to Title One, Inc. | | $25.50 |
| 1305. Payoff Handling/Courier Fee | to Title One, Inc. | | $25.00 |
| 1306. Prior Policy | to Title One, Inc. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $1,754.15 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

By _____

Michael E. Jones

_Edith A. Jones_

Edith A. Jones

### SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____, 6-2-05

Settlement Agent                          Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# REES-MAX, L.L.C. Payment Fact Sheet

6200 Baker Road, Suite 200, Eden Prairie, MN 55346    Ph: 952-417-0010   Fax: 952-417-9000  ChadwickB@RealtyRevolution.net

Tenants Name _____ Michael & Edith Jones _____

Property located at _____ 7451 27th St Circle  Oakdale, MN 55128 _____

## Monthly payment calculation

$ _____  Base payment

$ __136.00__  Property taxes (1/12 of Annual property taxes, including assessments)

$ ___44.90__  Dwelling Policy* (1/12 of REES Max's annual hazard insurance premium)

$ _____  Homeowners  Association Dues

$ _1774.10_  Contract for deed payment –
        interest rate __9.00%__ interest only payments
        balloon date __March 2010__

$ __500.00__  Other – $1595.66 owed from closing - $500 per month until paid

$ _2455.00_ Total Monthly Payment: due the 1st of each month, starting  **July 1, 2005** .

\* Security deposit in the amount of __0__ may be equal to the deductible you request we carry on the hazard insurance policy.
\* Pet deposit in the amount of     0     is fully refundable when you purchase the property.

Notes:

\* Your prorated 1st payment due on July 1, 2005 is $2203.00  (6/3/05 – 6/30/05)

   August 1, 2005 pmt: $2455.00

   September 1, 2005 pmt: $2455.00

   October 1, 2005 pmt: $2040.66

   November 1, 2005 pmt: $1955.00

\* A Contract-For-Deed will be prepared and made available after your August 1st payment with the
following terms:
   - 9.50% interest only and calculated on $236,546.70
   - 5 year balloon
   - Payoff will be $236,546.70

\* Please make timely payments. *Note: We are currently in a landlord/tenant relationship
and failure to make the payments in a timely manner will result in NO contract-for-deed option.*

\* Payments postmarked after the 8th of the month will be assessed a late fee of $50 per week, beginning
the 8th, 15th, 22nd and 29th day of each month, which will be collected immediately with the monthly
payment.

Please Sign, Date and Return 1 copy of this form with your July 1st payment.

## Contact information

*For questions or correspondence, contact*
Anne Storms
*Ph: 952-417-0010*
*Fax: 952-417-9000*

*Mail Payments to our*
*Property Management Company:*
REES, LLC
6200 Baker Road, Suite 200
Eden Prairie, MN  55346

Signature:_____
Date: _____

Signature:_____
Date: _____

EXHIBIT
**F**

6/29/2005

\* Our Dwelling Policy does not cover your personal contents