UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael E. Jones and
Edith A. Jones,

        Plaintiffs,

v.                              MEMORANDUM OPINION
                                     AND ORDER
                           Civil File No. 05-2384 (MJD/AJB)


REES-MAX, LLC;
Real Estate Equity Strategies, LLC;
Chadwick Banken; and l
Central Bank,

              Defendants.

---

Kristine K. Nogosek and Robert B. Bauer, Severson Sheldon Dougherty &
Molenda, PA., Counsel For Plaintiffs.

Jack E. Pierce, Pierce Law Firm, PA., Counsel For Defendants REES-MAX,
LLC; Real Estate Equity Strategies, LLC; and Chadwick Banken.

Brian M. Sund and Eric G. Nasstrom, Morrison Fenske & Sund, PA., Counsel
For Defendant Central Bank.

---

## I.  INTRODUCTION

Before the Court are cross motions for summary judgment.  Plaintiffs

move for partial summary judgment as to their claims that Defendants

violated Minn. Stat. §§ 325N.04, .11, .12 and .17.  Defendants REES-MAX,

LLC, Real Estate Equity Strategies, LLC ("REES") and Chadwick Banken

("Banken") move for summary judgment as to all counts.  Defendant

1

Central Bank has joined REES-MAX, REES and Banken's motion for summary judgment.

## II.   BACKGROUND

### A.   The Parties

Plaintiffs, Michael E. Jones ("M. Jones")  and Edith A. Jones ("E. Jones") were the owners of a home located at 7451 27th Street Circle North, Oakdale, Minnesota 55128 ("the Property").  E. Jones moved into the Property in 1977, and M. Jones moved into the Property in 1988.

Defendant REES-MAX, LLC ("REES-MAX"), is a holding company for real estate.  Defendant Real Estate Equity Strategies, LLC ("REES") is a company that looks at property to acquire and manages and maintains property held by REES-MAX.  Defendant Chadwick Banken ("Banken") is a licensed real-estate broker, and the chief manager for both REES and REES-MAX.  These companies are owned in part by Banken through a trust, and he receives income as a result of the activities of both REES and REES-MAX.

Collectively, Defendants deal with distressed properties that are in foreclosure and solicit potential clients through the use of a direct mailer.  If a homeowner responds to the mailer, Defendants offer several service options, including: 1) alternative mortgage services through Custom Mortgage and Funding; 2) reconveyance transactions, in which the

homeowner sells the property with the option of purchasing it back on a contract for deed; 3) "cash for keys", in which REES purchases the home outright; and 4) an option to purchase a different home from REES. Defendant Central Bank is a party to this action because it financed REES-MAX in the purchase of the Property.

### B.    Factual Background

In the fall of 2004, the Joneses fell behind on their mortgage in favor of Wells Fargo Home Mortgage Inc., and the Property went into foreclosure. The last payment was made on May 4, 2004.  The Joneses filed for bankruptcy on November 9, 2004.  In this bankruptcy proceeding, the Joneses submitted a payment plan that required monthly housing payments of $2,000.  In May 2005, however, the bankruptcy was dismissed due to the failure of the Joneses to make these payments.  This dismissal resulted in the lifting of the stay of foreclosure.

It was during this time that the Joneses received a notice from Banken that read:

> There are only a few months to go in your redemption period!  Your options to save the equity in your home are fading. Call me immediately for a no bull, no obligation, assessment of your situation.
>
> Even if you have been 'promised' by a mortgage broker or investor that they will help, CALL ME.  You need to have a back up plan in case they break their promise – intentionally or not.

> I will attempt to contact you once more before the end of the redemption.  By that time my only offer can be a few hundred or a few thousands of dollars for the keys to your home.  Don't find out the hard way its your only option then.  CALL TODAY to make sure you are getting the best solutions to your problem.

(Nogosek Aff., Ex. A) (emphasis in original).

As a result of this notice, M. Jones contacted Banken, and a few days later, they met at the Property.  At this initial meeting, Banken discussed options with the Joneses but provided no written documentation.  Banken later delivered documents to the Property, and any discussion of the documents took place over the phone.  Included in these documents was a cancellation document, a purchase agreement, a pre-negotiation disclosure, a contract for deed proposal agreement, and a residential real estate lease agreement.

Banken testified at his deposition that the transaction was structured so that REES-MAX would purchase the Property from the Joneses.  Thereafter, the Joneses would lease the Property from REES-MAX for a few months, after which time the Joneses would purchase the Property back from REES-MAX on a contract for deed.  Banken Dep. 71.

When the Joneses first received the purchase agreement, it did not identify who the buyer of the Property would be, and the purchase price was inconsistently listed as $275,000 and $268,000.  Pierce Decl., Ex. EE.

The residential real estate lease provided that the lease payment would be $2,005 per month.  <u>Id.</u> Ex. FF.  The contract for deed proposal provided that the purchase price of the Property was $275,000, less a down payment of $38,050, leaving an estimated contract balance of $236,950.  Further, the monthly interest only payment was estimated to be $1,777 plus taxes and insurance.  <u>Id.</u> Ex. GG.

On May 9, 2005, the Joneses went to Banken's office to sign the documents, but Banken was unavailable.  Instead, the Joneses executed the above described documents in the presence of Chris Conati, a REES employee.  Banken appears to have signed the documents later that same day.

On June 2, 2005, the Joneses met with Banken at the offices of Title One, Inc., to close the transaction.  At the closing, the Joneses executed a warranty deed transferring title to the Property to REES-MAX.  The Joneses also executed a seller's affidavit, which admittedly contained false representations concerning prior bankruptcies while the Joneses resided at the Property.  <u>Id.</u> Ex. JJ.

In addition, the Joneses executed a HUD-1 Settlement Statement ("HUD-1").  <u>Id.</u> Ex. KK.  Line 401 of the HUD-1 indicates that the contract sales price was $268,000.  Line 507 provided that REES was receiving a fee

5

in the amount of $18,912.34, and that $33,092.00 was identified as "Rees DP" in Line 508.  At the closing, REES-MAX tendered $58,000 in the form of a cashier's check and $214,000 from its financing with Central Bank.  In addition, the Joneses brought and tendered $1,500 at closing.  Nogosek Aff., Ex. S.  Title One, Inc. then issued a check to payoff the Joneses mortgage totaling $215,476.18 and issued three checks to REES-MAX totaling $52,181.13.  Id., Ex. U.

After the closing, the Joneses were informed that because they had only brought $1,500, rather than $3,000, they would need to pay back the deficiency in $500 increments until it was paid in full.  Pierce Decl., Ex. MM.  The parties dispute whether this $3,000 was owed.  With this "adjustment", the initial monthly lease payments were set at $2,455, which was approximately $500 more than they were paying on their previous mortgage.  The Joneses contested these fees and did not make any payments.

Thereafter, REES initiated an unlawful detainer action and was granted summary judgment.  Real Estate Equity Strategies, LLC. V. Jones, 720 N.W.2d 352, 354 (Minn. Ct. App. 2006).  REES was granted an eviction judgment, and although the Joneses appealed, the decision of the district court was affirmed.  Id., at 360.

The Joneses filed this action in October 2005 alleging that as a result of the transactions entered into between the parties, REES-MAX was able to acquire a property worth $278,000 for $214,000; stripping them of $64,000 in equity.  Further, the Joneses assert that Defendants did not comply with the requirements of Minnesota Statutes Chapter 325N, the Home Ownership and Equity Protection Act ("HOEPA"), or the Truth in Lending Act ("TILA").  Further, the Joneses believe that Defendants engaged in consumer fraud in violation of Minn. Stat. § 325F.69.  They are seeking various forms of relief available under these statutes and are seeking to rescind the transactions.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Id. at 323.  If the opposing party fails to make a showing that supports the existence of an element essential to the case on which they have the burden of proof at trial,

summary judgment must be granted. Id. at 332-33.  Summary judgment should not be viewed as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, designed to secure the just, speedy and inexpensive resolution of every action. Celotex Corp., 477 U.S. at 327.

**B.    Federal Causes of Action**

The Joneses have asserted claims under HOEPA and TILA, alleging that Defendants violated the disclosure requirements of both statutes and the implementing regulations. 15 U.S.C. §§ 1602, 1638, 1639 and 1641; 12 C.F.R. §§ 226.31 and .32.  Because of these violations, the Joneses argue that they have a continuing right to rescind the transaction. 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a)(2).

1.    Equitable Mortgage

Defendants argue that TILA only applies to a credit transaction.  15 U.S.C. § 1638(a); 12 C.F.R. §226.2(a)(14).  Defendants further argue that in order for HOEPA to apply, there must be "a consumer credit transaction that is secured by the consumer's principal dwelling…" 15 U.S.C. § 1602(aa)(1).  Defendants reason that since there was no debt instrument and no loan, neither TILA nor HOEPA apply.

Whether or not the Joneses' claims fall under TILA and/or HOEPA "depends on whether the parties conducted a 'consumer credit transaction' in which the defendants were 'creditors' within the meaning of TILA and HOEPA." Hruby v. Larsen, Civ. No. 05-894 (DSD/SRN), 2005 WL 1540130, *2 (D. Minn. 2005).  A mortgage will be subject to TILA and HOEPA as a consumer credit transaction secured by the consumer's principal dwelling. 15 U.S.C. § 1602(aa)(1).  To determine whether a transaction was in fact secured by a dwelling requires this Court to look to Minnesota law.  Hruby, 2005 WL 1540130, *2; 12 C.F.R. § 226.2(a)(25).

Courts generally presume that a deed is a conveyance.  Ministers Life & Cas. Union v. Franklin Park Towers Corp., 239 N.W.2d 207, 210 (Minn. 1976).  However, Minnesota courts have adopted the doctrine of "equitable mortgage" "to prevent an overreaching by one party that would unfairly exploit the other party's financial position or relative lack of real estate dealings." Id.  Essentially, if "the real nature of the transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, it may be treated as an equitable mortgage".  First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 503 (Minn. 1981).  The intent of the parties is paramount, and to overcome the presumption that a deed is a conveyance, it must be clear that both parties intended that the

transaction result in a mortgage.  <u>Ministers Life & Cas. Union</u>, 239 N.W.2d at 210.

In order to determine intent, courts may look to the documents relating to the transaction. <u>Id</u>. The lack of terms such as "debt", "security", or "mortgage" are strong evidence indicating that the transaction is not a mortgage.  <u>Id</u>.  However, the fact that documents do not express the existence of a loan is not conclusive, and the intention of the parties is to be ascertained by looking at "all the facts and circumstances surrounding a transaction." <u>Gagne v. Hoban</u>, 159 N.W.2d 896, 899 (Minn. 1968).   "In the final analysis, the question of whether the parties to a conveyance really intended it to be absolute or security for indebtedness is for the trier of fact."  <u>Gagne</u>, 159 N.W.2d at 900.

Defendants argue that the documents at issue here state explicitly that no security interest is being granted.  For example, the Pre-Negotiation Disclosure states "the Contract for Deed is not intended a loan and a mortgage securing repayment of a debt to REES." Pierce Decl., Ex. HH. Defendants further argue that the Joneses themselves stated that they did not believe the Defendants loaned them any money.  E. Jones Dep. p. 135; M. Jones Dep. p. 106.  During her deposition, E. Jones was asked to review

all related documents and was not able to identify anything that could be construed as a mortgage. E. Jones Dep. ¶. 130-133.

Defendants, in seizing on these arguments, elevate form over substance.  The true inquiry is whether the parties intended an *outright* sale or whether the "purpose and effect of the transaction is to give security on real property for a debt." <u>Gagne</u>, 159 N.W.2d at 899.

The Court finds genuine issues of fact exist on the issue of intent. The Joneses assert that they believed that Banken was offering a service that would allow them to stay in the house, make monthly payments, and pay Defendants off within 5 years.  M. Jones Dep. ¶. 81-82.  In addition, they assert it was not until the commencement of the eviction action that they became aware they allegedly sold the Defendants the property.  <u>Id</u>. at 80.

In addition to looking to the intent of the parties, courts will also consider the following factors in making a determination as to whether a conveyance should be construed as an equitable mortgage: 1) the disparity between the value of the property and the price paid; 2) the nature of the solicitation that gave rise to the transaction; 3) attempts to sell the property on the open market; 4) whether there was a negotiated sale price; and 5) whether there was continuous occupancy.  <u>Brown v. Grant Holding, LLC.</u>,

394 F. Supp.2d 1090, 1098-99 (D. Minn. 2005).  The Court finds these

factors all weigh in favor of a finding that the conveyance at issue should be

construed as an equitable mortgage.

In this case, the Property was appraised at $278,000 and purchased

by REES-MAX for $214,000.  Given this disparity, this factor weighs in favor

of finding that the transaction was intended to operate as a mortgage.  <u>See</u>

<u>Brown</u>, 394 F. Supp. 2d at 1098; <u>Gagne</u>, 159 N.W.2d at 900.   A typical

buyer does not leave the closing table with $33,092.

There is also evidence indicating that Banken made frequent

assurances to the Joneses that they would be able to remain in their home.

M. Jones Dep. 57, 59-60.  In addition, the evidence demonstrates that the

Property was not listed on the open market and there is little, if any,

evidence demonstrating that the sale price was negotiated.  Finally, the

evidence demonstrates that the Joneses were allowed to continue to occupy

the Property just as they had before the transactions at issue took place.

<u>See</u> <u>Brown</u>, 394 F. Supp. 2d at 1099.

2.    <u>Rescission</u>

In Count VIII of the First Amended Complaint, the Joneses seek to

exercise their right to rescission under TILA and HOEPA.  Defendants argue

that in order to be entitled to such relief, the Joneses must tender to

Defendants the reasonable value of the property. 15 U.S.C. § 1635(b).  In

this case, Defendants assert the reasonable value of the Property is

approximately $215,000; which was the mortgage amount secured to pay

off the Wells Fargo mortgage.  Defendants argue that the Joneses have not

met their burden of demonstrating that they could tender the value of the

property within a reasonable period, and therefore are not entitled to

rescission.

        The right to the remedy of rescission may be conditioned upon

repayment to a creditor. See eg., FDIC v. Hughes Dev. Co., 684 F. Supp.

616, 625 (D. Minn. 1988) (citing LeGrone v. Johnson, 534 F.2d 1360, 1362

(9th Cir. 1976)).   In addition, it is within this Court's discretion to allow the

debtor a reasonable time to pay the mortgage amount. See FDIC 684 F.

Supp. at 625 (allowing debtor one year to tender principle).  Given the

discretion within which the Court may condition the right to rescission, it is

not necessary that the Joneses demonstrate they have the means to secure

the necessary financing at this point in time.

        Accordingly, Defendants' motion for summary judgment as to the

TILA/HOEPA claims must be denied.

### C.     State Causes of Action

Defendants are seeking summary judgment on all claims arising under state law.  The Joneses are seeking partial summary judgment, that as a matter of law, Defendants Banken, REES-MAX and REES have violated Minn. Stat. §§ 325N.04, .11, .12, and .17.

Chapter 325N of Minnesota State statutes regulates mortgage foreclosures as part of an overall consumer protection scheme.  This Chapter is divided into two distinct sections: (1)  §§ 325N.01 through .09 which regulate "foreclosure consultants", and (2) §§ 325N.10 through .18 which regulate "foreclosure purchasers."

### 1.     Foreclosure Consultants, Minn. Stat. §§ 325N.01 through .09

A foreclosure consultant is a person who, either directly or indirectly, makes a solicitation or offer to any owner that they will, for compensation, do any of the following: (1) stop or postpone the foreclosure sale . . . or (8) save the owner's residence from foreclosure.  Minn. Stat. § 325N.01(a).  A foreclosure consultant must not, *inter alia*, receive any consideration from a third party in connection with services rendered unless this consideration is fully disclosed to the owner.  Minn. Stat. § 325N.04(4).

The Joneses assert that Banken sent them a solicitation notice that offered to aid them in saving their home and stopping the foreclosure.

Further, they assert that Banken was compensated for his services by REES after the closing on the Property.  The record shows that REES received almost $19,000 in fees, and that Banken received a portion of that fee in the form of dividends and distributions from REES.  The Joneses argue that Banken's failure to disclose this fact violates Minn. Stat. § 325N.04(4) and entitles them to summary judgment as to this claim.  They also seek rescission of the foreclosure consultant contract pursuant to Minn. Stat. § 325N.02.

Defendants argue Banken is not a foreclosure consultant, because the solicitation notice did not specifically provide that Defendants would stop, postpone or save the home from foreclosure.  Further, Defendants point to the deposition of E. Jones, in which she states that Banken did not represent to her that he would postpone the foreclosure of her home.  E. Jones Dep., p. 73.

While the solicitation notice sent by Banken does not mirror the statutory language to "stop" "postpone" or "save the home", the notice does reference the remaining redemption period, and offers "options to save the equity in the home."  Nogosek Aff., Ex. A.  Thereafter, Banken arranged for the Joneses to enter into a series of transactions which would allow them to

remain in their home.  Based upon these undisputed facts, the Court finds

that Banken is a foreclosure consultant as defined by statute.

As a foreclosure consultant, Banken was required to fully disclose to

the Joneses the fact that he would receive compensation in arranging the

transactions which would allow the Joneses to stay in their home.  The

HUD-1 provided that REES received fees in the amount of $18,912.34.

Banken testified at his deposition that he receives income from the real

estate activities of REES-MAX and REES.  Banken Dep. 124.  The Joneses

assert, however, that they were not informed concerning Banken's

compensation.  Accordingly, genuine issues of material fact preclude

summary judgment as to this particular violation.

2.      Foreclosure Purchasers, Minn. Stat. §§ 325N.10 through .18

A foreclosure purchaser is a person, joint venture, or enterprise that

has acted as the acquirer of more than one foreclosure reconveyance during

any 24 month period.  Minn. Stat. § 325N.10, Subd. 4.  A foreclosure

reconveyance involves the transfer of title to real property by a foreclosed

homeowner by creation of a mortgage or other lien or encumbrance that

allows the acquirer to obtain title by redeeming the property.  Minn. Stat. §

325N.10, Subd. 3(1).  In addition, it involves a subsequent conveyance, or

promise of a conveyance of an interest back to the foreclosed homeowner

16

which allows the homeowner to possess the property.  Minn. Stat. §

325N.10, Subd. 3(2).

The Joneses assert that REES and REES-MAX are foreclosure

purchasers as they have acquired more than one foreclosure reconveyance

during a 24 month period, and continue to engage in reconveyance

transactions.  See Nogosek Aff., Ex. M; Banken Dep., ¶. 64-65.  For purposes

of its motion for summary judgment, Defendants do not dispute that REES-

MAX and REES are foreclosure purchasers and that the transaction at issue

was a foreclosure reconveyance.  Defendants' Memorandum in Support of

Summary Judgment, p. 23.

a.      Foreclosure purchase contract requirements

Minnesota law requires that every foreclosure purchaser "shall enter

into every foreclosure reconveyance in the form of a written contract."

Minn. Stat. § 325N.11.  In addition, "[e]very contract required by section

325N.11 must contain the entire agreement of the parties."  Minn. Stat. §

325N.12.  Such contract must also include those terms set forth in Minn.

Stat. § 325N.12 (1)-(8).  For example, the contract must include the name,

business address and telephone number of the foreclosure purchaser, and

include "a complete description of the terms of payment or other

consideration including, but not limited to, any services of any nature that

17

the foreclosure purchaser represents he or she will perform for the foreclosed homeowner before or after the sale." Minn. Stat. § 325N.12(1) and (4). The contract must also include a notice of cancellation in the following form:

NOTICE REQUIRED BY MINNESOTA LAW

Until your right to cancel this contract has ended, . . . (Name) or anyone working . . . (Name) CANNOT ask you to sign or have you sign any deed or any other document.

Minn. Stat. § 325N.12 (8).

In addition, the contract must comply with the notice requirements set forth in section 325N.14 (a) and (b). Generally, these notice requirements provide that the foreclosure purchaser notify the foreclosed homeowner, in a specific format, of the right to cancellation, and the date the right to cancellation expires. The five day cancellation period does not begin to run until all parties have executed the contract and the foreclosure purchaser has complied with section 325N.14. Minn. Stat. § 325N.14 (d).

Defendants respond that it substantially complied with these statutory requirements, referring to the Contract for Deed and the Pre-Negotiation Disclosure. Pierce Decl., Exs. GG and HH. Defendants admit that the contracts did not technically comply with the cancellation notice

18

requirements, but assert that the Joneses are not entitled to summary judgment as they have not shown this lack of compliance caused them damage.  Defendants assert that there is no evidence that after executing the documents on May 9, 2005, that either Plaintiff wished to rescind the transaction.  Defendants further point out that almost a month passed between executing the documents and the closing, and that during that time, the Joneses did not assert a desire to cancel.

Contrary to Defendants' assertions of substantial compliance, the Court finds that Defendants did not comply with sections 325N.11 and 12 in many respects.  Section 325N.12 requires *a* written contract that *contains the entire agreement of the parties* before the execution of any instrument of conveyance. (emphasis added).  The Court has reviewed the record and finds no contract contains the entire agreement of the parties.  There are a series of documents - a purchase agreement, lease, contract for deed, pre-negotiation disclosure - but not one document that fully explains the entire agreement.  The Court further finds that no contract executed prior to the execution of the instrument of conveyance - the warranty deed - provides that the lease payment will be $2,455 for the first two months, as provided in the payment fact sheet sent to the Joneses after the closing.  Pierce Decl., Ex. MM.  According to the Joneses, they disputed the initial lease payments,

19

and did not make the lease payments because of this dispute.  Had they

been aware of the initial lease payments, they may have exercised their

rights to cancellation, or never executed the documents in the first place.

The Court thus finds that the Joneses are entitled to summary

judgment on their claims that Defendants failed to comply with Minn. Stat.

§§ 325N.11 and .12.

b.      *Failure to verify a reasonable ability to pay*

A foreclosure purchaser is prohibited from attempting to enter into a

foreclosure reconveyance unless they can demonstrate they have verified

that the foreclosed homeowner has a reasonable ability to pay for the

subsequent conveyance of an interest back to them.  Minn. Stat. §

325N.17(a)(1).  In addition, there is a rebuttable presumption that a

foreclosure purchaser has failed to do this if the purchaser has not obtained

documents other than a statement from the homeowner of assets liabilities

and income.  Id.

Defendants have admitted that they relied solely on the Joneses'

representation of their income.  Banken Dep., ¶. 74-76.  In fact, Banken

testified that it is the general practice of REES not to verify a foreclosed

homeowner's income or seek credit reports.  Banken Dep., ¶. 31-33.

Defendants nonetheless seek to avoid liability under this statutory
requirement by asserting that the Joneses' statements about their income
was later verified by M. Jones in his deposition.  Section 325N.17(a)(1)
makes clear, however, that verification of income is to be made prior to the
foreclosure reconveyance.  Whatever M. Jones stated at his deposition, or in
his bankruptcy proceeding, is irrelevant.[1]  What is relevant is the fact that
Defendants took no steps to *verify* the Joneses' income prior to entering into
the foreclosure reconveyance transactions.  The Joneses are thus entitled to
summary judgment as to this claim.

     *c.    Additional violations*

It is a violation of the statute for a foreclosure purchaser to represent,
directly or indirectly, that they are assisting the foreclosed homeowner to
"save the house" or to assert a substantially similar claim.  Minn. Stat. §
325N.17(d)(3).  Also, a foreclosure purchaser must not represent, directly
or indirectly, that they are assisting the foreclosed homeowner to prevent a
completed foreclosure if in fact the result of the transaction is that the

---

[1]Defendants allege that in their bankruptcy filings, the Joneses listed a net monthly income of
$5,543.  Yet, their income tax returns for 2004 and 2005 show a combined adjusted gross
income of $37,329 and $40,906, respectively.  Thus, if Defendants had verified the Joneses'
income, they would have discovered an inability to meet a monthly obligation of $2,455 or
$2,005.

foreclosed homeowner will not complete a redemption of the property.

Minn. Stat. § 325N.17(d)(4).

The Joneses assert that the written solicitation they received from
Banken, and subsequent oral representations by Banken to them, constitute
a violation of section 325N.17(d)(3) and (4). The Court agrees. As
discussed previously, while the notice did not specifically state that Banken
would "save the house", the language in the notice does so indirectly by
referencing the redemption period, and options "to save the equity in your
home". Nogosek Aff, Ex. A.

Finally, foreclosure purchasers are prohibited from making any
statements, directly or by implication, or engage in any conduct that is false,
deceptive or misleading. Minn. Stat. § 325N.17(e). The Joneses claim that
Defendants misrepresented that the lease payments would be $2,005 per
month but that after the closing, they received a payment fact sheet listing
the lease payments as $2,455 per month. Pierce Decl., Ex. MM.

Defendants argue that the Joneses cannot rely on the payment fact
sheet for their claim that Defendants made false or misleading statements,
as the payment fact sheet was sent to the Joneses after the closing. The
Court disagrees.

The evidence shows that prior to closing, the Joneses were led to believe that the lease payments would be $2,005. Yet, after closing, the Joneses were told they had to pay $2,455. Defendants claim the additional amounts were due to the fact that the Joneses did not bring $3,000 to the closing, yet the record is not clear the Joneses were aware of this requirement prior to closing. There is no mention of the obligation to bring $3,000 to closing in the foreclosure reconveyance documents that are a part of the record. Accordingly, the Court finds a genuine issue of material fact exists as to the claim that Defendants violated section 325N.17(e).

> d.    Causation

Defendants argue that the Joneses have the burden of proving a legal nexus between the complained of acts and their alleged monetary losses. See Group Health Plan, Inc. v. Philip Morris Incorporated et al, 621 N.W.2d 2, 14 (Minn. 2001); LeSage v. Norwest Bank Calhoun-Isles N.A., 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). Because the Joneses have failed to demonstrate that their alleged damages were proximately caused by Defendants' conduct, Defendants' motion for summary judgment on the claims asserted pursuant to Minn. Stat. § 325N should be granted. The Court disagrees.

In this case, there are genuine issues of material fact as to whether the Defendants' conduct caused the Joneses' damages.  First, it is undisputed that the Joneses lost their home, and any equity they had in the home.  Further, they assert they were not informed of the actual monthly lease payment until after the closing, nor did they understand the true nature of the transactions.  M. Jones testified that he believes Banken intended him to fail, "by redoing the payments and putting them into a sale instead of a service which I understand it to be."  M. Jones Dep., p. 111.

With respect to the claimed violations of Minn. Stat. §§ 325N. 11, .12 and .14, the Joneses note that these statutory provisions mandate that foreclosure purchasers undertake certain obligations, whereas section 325N.17 prohibits certain conduct.   As such, they argue that the same causal link is not required.  For example, under TILA, failure to provide the debtor notice of the right to rescind entitles the borrower to rescind the transaction.  See eg., FDIC, 684 F. Supp. at 624; Hanlin v. Ohio Builders & Remolders, Inc., 212 F. Supp.2d 752 (S.D. Ohio 2002).  No further showing of damages is required.  The Joneses argue, and the Court agrees, that this principle should apply to violations under Minn. Stat. §§ 325N.11, .12. and .14.

The Joneses are not moving for summary judgment as to their damages claim at this point.  Rather, they seek summary judgment only as to whether, as a matter of law, Defendants violated the relevant sections of Minn. Stat.  § 325N.  The Joneses intend to request a hearing on damages at a later date.  As discussed above, the Court will grant the Joneses in part.[2]

### 3.   Minnesota Prevention of Consumer Fraud Act

The Joneses have also asserted a claim pursuant to the Minnesota Prevention of Consumer Fraud Act.  This statute prohibits the use of a fraudulent statement in connection with the sale of merchandise, which includes real estate.  Minn. Stat. § 325F.69, Subd. 1.  Defendants move for summary judgment as to this claim.

A violation of sections 325N.10 to 325N.17 is considered to be a violation of § 325F.69.  Minn. Stat.  § 325N.18, subd. 1.  As this Court has found Defendants have violated sections of Minn. Stat.  § 325N, Defendants are not entitled to summary judgment as to this claim.

---

[2]Defendants argued that the TILA/HOEPA claims and the Minn. Stat. § 325N claims are mutually exclusive - that is the former covers credit transactions, such as mortgages, and the latter covers only sales.  The Court disagrees.  An equitable mortgage, which would be governed by TILA/HOEPA, may arise from a transaction that on its face is a sale, such as a sale/lease-back.  See eg. Hruby 2005 WL 1540130 at *3.   Thus, claims under TILA/HOEPA and Section 325N are not mutually exclusive.

**D.   Central Bank' Joinder of Defendants Banken, REES and REES-MAX's Motion for Summary Judgment.**

REES-MAX obtained a mortgage on the Property through Central Bank.  The Joneses acknowledge that Central Bank is an indispensable party with respect to the claims of rescission only.  Because REES, REES-MAX and Banken's motion for summary judgment will be denied, and the right to rescission has not been extinguished, Central Bank's motion will also be denied at this time.

IT IS HEREBY ORDERED THAT:

1.  Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 43] is GRANTED in part and DENIED in part.  The motion is denied with respect to the claimed violations of Minn. Stat. § 325N.04(4) and .17(e), and granted in all other respects.

2.  Defendants' Motion for Summary Judgment [Doc. No. 41] is DENIED.

3.  Defendant Central Bank's Motion for Summary Judgment [Doc. No. 54] is DENIED.

Date: September 17, 2007

s / Michael J. Davis
Michael J. Davis
United States District Court